[No. B159733. Second Dist., Div. Four. Apr. 6, 2005.]

GIL N. MILEIKOWSKY, Plaintiff and Appellant, v.
TENET HEALTHSYSTEM et al., Defendants and Respondents.

### COUNSEL

Roger Jon Diamond for Plaintiff and Appellant.

Ervin, Cohen & Jessup, Mark T. Kawa and Joseph R. Cilic for Defendants and Respondents.

### OPINION

**CURRY, J.**—Appellant Gil Mileikowsky, M.D., appeals from an order which granted (1) a request for terminating sanctions, and (2) a request for $8,500 in monetary sanctions. The order was based on his repeated failure to provide discovery. For the reasons set forth herein, the court's order is affirmed.

Although an order granting a request for terminating sanctions is not appealable and the losing party should ordinarily await entry of the order of dismissal to file notice of appeal, we denied a motion to dismiss the appeal on grounds of prematurity because an order granting monetary sanctions in amounts over $5,000 is immediately appealable. (Civ. Proc. Code, § 904.1, subd. (a)(12).) As is explained further below, although we attempted to limit our review to issues pertaining to the monetary sanctions awarded, our reasoning necessarily encompasses the propriety of granting terminating sanctions. We presume, therefore, that after the remittitur issues, an order striking the operative complaint[1] and dismissing the action will be entered.

---

[1] At one point, Dr. Mileikowsky had two related litigations pending, one a petition for writ of mandate in case No. BS056525 and the other a complaint seeking damages in case No. BC233153. Our understanding is that, in accordance with the parties' stipulation and a court order, case No. BS056525 was to be dismissed when Dr. Mileikowsky filed a fourth amended complaint in case No. BC233153.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *Facts Related to Substantive Claims*

#### 1. *Original Complaint and Preliminary Injunction*

Dr. Mileikowsky brought suit against Tenet Healthsystem and Encino-Tarzana Regional Medical Center[2] in case No. BS056525 in April 1999. The petition for writ of mandate alleged that Dr. Mileikowsky had medical and surgical privileges at ETRMC· since his appointment to membership on the medical staff in 1986. Every two years thereafter until 1998, he was reappointed to membership. At that time, he claimed, he was not given actual notice of the approaching expiration date of his two-year term, and was not timely furnished with the materials needed to obtain reappointment (essentially a written application) in violation of medical staff bylaws. In February 1999, Dr. Mileikowsky received notice that, as he had not timely filed his application for reappointment, he was considered to have voluntarily resigned. He attempted to file a reappointment application, but was rebuffed. Dr. Mileikowsky challenged the decision to deem him a voluntary departee, and ETRMC's medical executive committee allegedly rejected that challenge "without prior notice[] or hearing" and in violation of his "right to due process."

The petition sought a determination that ETRMC's actions were invalid and a denial of Dr. Mileikowsky's due process rights, and an order directing ETRMC to set aside its actions or restraining it from giving effect to its determination that Dr. Mileikowsky had voluntarily resigned.

On the day the complaint was filed, the court set a hearing on an order to show cause regarding preliminary injunction, which it granted on April 19, 1999. The injunction precluded ETRMC from preventing Dr. Mileikowsky from exercising the privileges of an active status physician and surgeon and treating patients, or reporting to others that he had voluntarily resigned.

---

[2] The Encino-Tarzana Regional Medical Center was later said to be a fictitious name of AMI/HTI Tarzana Encino Joint Venture. This entity and its physical facilities will be referred to hereafter as ETRMC. Additional Tenet entities referred to as Tenet Healthcare and Tenet Healthcare Corporation were later added as defendants. These entities along with Tenet Healthsystem will be jointly referred to as Tenet.

### 2. *Amended Petition*

In June 1999, Mileikowsky filed an amended petition that added two Tenet entities and 22 individual defendants.[3] The amended petition also added tort claims under Business and Professions Code section 17200, and for interference with prospective economic advantage and defamation.

On June 16, 2000, the parties stipulated that "[the] preliminary injunction [was] to remain in effect pending determination of damage claims, and that [Dr. Mileikowsky] does not need mandamus relief as long as the preliminary injunction remains in effect." Thereafter, the court took the petition for writ of mandate off calendar, and transferred the matter to a trial department.

### 3. *New Complaint and Temporary Restraining Order*

In January 2000, while the litigation in case No. BS056525 was ongoing, ETRMC's executive committee recommended that Dr. Mileikowsky not be reappointed to its medical staff.

In July 2000, Dr. Mileikowsky, represented by new counsel, filed a new complaint (case No. BC233153) for breach of contract, breach of covenant of good faith, infliction of emotional distress, retaliation for whistleblowing, and defamation.[4] The primary basis of this complaint was that Tenet and ETRMC had violated the April 1999 preliminary injunction by placing restrictions on his access to ETRMC facilities, including having him constantly accompanied by security personnel when on ETRMC premises. Dr. Mileikowsky also claimed he was retaliated against for reporting alleged violations of medical standards to the California Medical Association and for assisting a plaintiff in a medical malpractice action against ETRMC.

In a letter attached to the complaint as an exhibit, Dale Surowitz, ETRMC's chief executive officer, stated to Dr. Mileikowsky: "As a condition to your continued access to hospital facilities and use of hospital resources, you are directed to inform my office (or the nurse supervisor in charge

---

[3] The new entities were Tenet Healthcare, Tenet Healthcare Corporation, and AMI/HTI Tarzana Encino Joint Venture, doing business as Encino-Tarzana Regional Medical Center. The individual defendants were Daryl Alexander, Sunit Ben-Ozer, Stephen Cooper, Gary Dosik, Allan Entin, Brian Fenmore, Rose Franco, Eugene Gootnick, Paul Greenberg, Theodore Hariton, Laurie Holoff, Patricia Jones, Allan Lichtman, Debra Miller, Douglas Morrow, Stephen Pine, Peter Rubenstein, Sheldon Schein, James Shields, Dale Surowitz, William Treiger, and Michael Vermesh.

[4] This complaint named three entity defendants—Tenet Healthsystem, Tenet Healthcare Corporation, and ETRMC—and 12 individual defendants—Cooper, Dosik, Fenmore, Franco, Jones, Lichtman, Miller, Morrow, Pine, Surowitz, and Vermesh, who had been named in the earlier petition and complaint, and new party Jerry Clute.

outside normal business hours) whenever you enter hospital premises. You are also directed to inform my office, in advance, of any surgical procedure, which you schedule at this facility. Hospital Administration will then assure that security personnel accompany you whenever you are on hospital premises." The letter went on to say: "[A]ny failure by you to comply with the measures described [above], or any further violation of hospital policies (including, but not limited to, perceived threats or intimidation of hospital personnel or medical staff members, and copying of patient records), will result in the summary suspension of your medical staff membership and privileges."

When he filed the new complaint, Dr. Mileikowsky sought a temporary restraining order (TRO) and order to show cause regarding preliminary injunction. The opposition justified ETRMC's action by relating an incident that occurred in December 1999. The operating room manager, Marleen Hafer, entered a surgical suite where Dr. Mileikowsky was operating on a patient, and informed him that his surgical assistant did not have clinical privileges and should be immediately replaced by an alternate. Dr. Mileikowsky "aggressively backed Ms. Hafer, who is less than five feet tall, against a wall while screaming at her, lunging in her direction with his finger and making a head butting motion toward her." The anesthesiologist, "fear[ing] for Ms. Hafer's physical safety," interjected himself and caused Dr. Mileikowsky to turn away. Another observer from outside the room gathered male personnel in case they were needed to restrain Dr. Mileikowsky. The opposition further claimed that Dr. Mileikowsky "has been involved in a longstanding series of incidents in which he has threatened, verbally attacked and even physically assaulted hospital employees and other members of the Medical Staff." The only specific incidence of physical assault described involved grabbing someone's name badge "while screaming and acting in an uncontrolled and dangerous manner" that occurred in February 1999. There was also a reference to a 1991 incident where Dr. Mileikowsky screamed at someone over the phone and threatened to " 'become an Israeli warrior and go to war.' "

The court issued a TRO dated July 11, 2000, prohibiting ETRMC from "requiring [Dr. Mileikowsky] to be escorted while with or in view of any patient."

In August 2000, Dr. Mileikowsky filed an application for contempt and sanctions against ETRMC for violation of the July 2000 TRO. Dr. Mileikowsky contended that security personnel sent to follow him were seen by patients and family members. In addition, a handwritten memorandum was posted on an ETRMC bulletin board, stating: "When Dr. Mileikowsky is here, he is to be escorted by security at all times." The application was denied.

In September 2000, defendants sought to modify the July 2000 TRO due to Dr. Mileikowsky's actions in visiting ETRMC to take photographs in support of his application for contempt. The request was denied. Subsequently, however, the court did not put in place a preliminary injunction.[5]

In October 2000, Dr. Mileikowsky filed a first amended complaint in case No. BC233153, omitting all of the individual defendants save for Surowitz, and adding claims for invasion of privacy, false light, and interference with prospective economic advantage based on the same essential facts of having him followed by security, interfering with his treatment of patients, etc. The court found that the case was related to the earlier petition, and deemed the earlier petition the "lead case." By order dated January 10, 2001, a motion to consolidate was granted. In April 2001, however, the court issued an order stating that the cases were henceforth "unconsolidated."

In November 2000, ETRMC summarily suspended Dr. Mileikowsky's clinical privileges.

In April 2001, Dr. Mileikowsky filed a second amended complaint in case No. BC233153. Dr. Mileikowsky continued to insist that Tenet, ETRMC, and Surowitz infringed on his rights by interfering with his ability to work at ETRMC in retaliation for his actions in reporting misfeasance and supporting a plaintiff in a medical malpractice lawsuit.

In September 2001, Dr. Mileikowsky filed a third amended complaint in case No. BC233153, further refining his claims. The parties agreed that he would file a fourth amended complaint to streamline the issues and include the facts contained in case No. BS056525 so that case could be dismissed.

The fourth amended complaint was filed on February 28, 2002. The defendants were Tenet, ETRMC, Surowitz, Ben-Ozer, Fenmore, Miller, Greenberg, Pine, Schein, and Vermesh.[6] The new complaint contained allegations of preferential treatment afforded to certain physicians and referral schemes that amounted to kickbacks uncovered and reported by Dr. Mileikowsky. The complaint further alleged that defendants had caused Dr. Mileikowsky to lose privileges at another medical facility. It alleged that Dr. Mileikowsky had been summarily suspended in November 2000 without good reason. It continued to allege that defendants were acting in retaliation for Dr. Mileikowsky's decision to assist the plaintiff in a malpractice action.

---

[5] The original April 1999 preliminary injunction was still in place.

[6] These parties are referred to hereafter as respondents.

## B. *Facts Related to Discovery Sanctions*

### 1. *First Motion to Compel*

On September 17, 1999, ETRMC and individual defendants Greenberg, Jones, Lichtman, Miller, Morrow, Pine, Rubenstein, Schein, Shields, Surowitz, Treiger, and Vermesh each propounded 42 special interrogatories in case No. BS056525[7] seeking to flesh out the facts that supported the contentions made in the amended petition that defamatory statements were made by propounding parties, that they engaged in acts intended to drive Dr. Mileikowsky from his medical practice, destroy his reputation, cause him to be disciplined, etc. The questions asked by each propounding party were virtually identical in substance, inquiring whether Dr. Mileikowsky contended that the propounding party made defamatory statements or engaged in other actions discussed in the amended complaint. In addition, ETRMC sought production of documents. Dr. Mileikowsky was granted four extensions—to December 10, 1999—to respond to the discovery requests.

On December 17, 1999, the propounding parties filed 13 separate but essentially identical motions to compel responses to the interrogatories and asked for monetary sanctions. In Dr. Mileikowsky's opposition to the motions, his counsel stated in a declaration that he was "a busy obstetrician/gynecologist" and that they "had severe difficulty in finding the necessary time to prepare responses to all of the simultaneously propounded discovery." Counsel "anticipate[d] . . . that prior to the time that this matter is heard, that the discovery responses will have been served." That did not occur, and by order dated January 6, 2000, the court instructed Dr. Mileikowsky to respond to the interrogatories and document requests by January 19, 2000, and awarded a total of $2,322 in sanctions.

### 2. *First Request for Terminating Sanctions; Second Motion to Compel*

On January 25, 2000, defendants moved for terminating sanctions or monetary sanctions due to failure to comply with the court order of January 6. Counsel stated in a declaration that he had been advised by Dr. Mileikowsky's counsel that he would comply with the court's order two days late—by January 21—but that no responses had been received. The opposition again claimed that Dr. Mileikowsky did not have time to complete the discovery due to his "busy practice." Counsel stated that responses would be completed before the hearing date on the request for terminating sanctions.

Also on January 25, 2000, ETRMC moved to compel responses to a second set of special interrogatories and requests for production of documents

---

[7] The interrogatories attached an attorney declaration stating that the number was warranted "because of the complexity and the quantity of existing and potential issues in [the] action."

propounded on December 10, 1999. The interrogatories and requests were directed at learning whether Dr. Mileikowsky had copied medical records of persons who were not his patients, and Dr. Mileikowsky had raised objections without responding. Dr. Mileikowsky opposed the motions, arguing that his objections, one of which was that the questions violated his right against self-incrimination, had been well taken.

By order dated February 16, 2000, the court granted the motions with respect to monetary sanctions and ETRMC's motions to compel further responses to the interrogatories. Dr. Mileikowsky was to serve responses on or before February 28.

### 3. *Second Request for Terminating Sanctions*

On March 6, 2000, ETRMC sought terminating sanctions based on failure to comply with the January 6, 2000, order by actually producing documents, although no firm date had been set for that by the court. Instead, the parties were to "confer with each other through respective counsel and determine a deadline by which [Dr. Mileikowsky] would produce documents" after receipt of the responses to the request for production. Dr. Mileikowsky's opposition stated that the documents had been delivered on March 9 (or March 14), and blamed the delay on serious health problems within Dr. Mileikowsky's family.[8] On March 28, 2000, the court ordered Dr. Mileikowsky to produce the documents by April 7 and to pay monetary sanctions.

### 4. *Third Motion to Compel*

On March 16, 2000, ETRMC brought a motion to compel based on failure to respond, without objection, to the second set of interrogatories and request for production of documents as required by the order of February 16. In opposition, Dr. Mileikowsky contended that ETRMC's attorney failed to meet and confer and that responses were belatedly served—due to "grave family health reasons"—on March 21, 2000. In his responses, Dr. Mileikowsky stated that he had not copied any medical records of persons who were not his patients, and that there were no documents responsive to the request. By order dated April 6, 2000, the court ordered Dr. Mileikowsky to pay monetary sanctions. The order further stated: "This is the third time that the court has imposed monetary sanctions upon [Dr. Mileikowsky] and his counsel for failures to provide discovery in this proceeding. The court believes that such

---

[8] Dr. Mileikowsky stated in his attached declaration that in late February 2000, he traveled to Belgium to attend his nephew's bris and naming ceremony, and to be with his brother who was having a surgical biopsy. He was also needed there to consult with his mother's doctors to develop a treatment plan for her chronic cardiovascular problems.

monetary sanctions are not sufficient to obtain compliance by [Dr. Mileikowsky] and his counsel with their discovery obligations, and the court believes that the failure to provide discovery in this case has been frivolous and in bad faith. Accordingly, [Dr. Mileikowsky] and his counsel are warned that any further failures on their part to comply with their discovery obligations in this matter may result in the imposition of an evidence sanction, an issue sanction, or a terminating sanction, in addition to monetary sanctions."

### 5. *Third Request for Terminating Sanctions*

On February 28, 2000, ETRMC served a third set of requests for production on Dr. Mileikowsky seeking Dr. Mileikowsky's curriculum vitae, documents evidencing his board certification in the specialty of infertility, and documents evidencing his board certification between January 1, 1980, and the present. On April 13, 2000, ETRMC once again moved for terminating sanctions, this time for failure to respond to the third set of requests for production. In opposition, counsel for Dr. Mileikowsky claimed to have inadvertently filed the new request with older requests, failing to realize that it was new. The two documents responsive to the request were attached to the opposition. On May 8, the court ordered Dr. Mileikowsky to pay monetary sanctions, but refrained from dismissing the action because of "the fact that the discovery request in this instance appears to be of trivial importance and appears to be one which could readily have been included in one of the prior discovery requests." The court was therefore "not positively certain that this discovery request was not motivated more by the desire to harass [Dr. Mileikowsky] than by the need of relevant information."

### 6. *Fourth Motion to Compel*

On August 18, 2000, ETRMC and the individual defendants moved to compel Dr. Mileikowsky to respond to questions he was asked at his deposition and for monetary sanctions. Dr. Mileikowsky had refused to translate Hebrew language advertisements he had placed in Hebrew language newspapers, or to respond to questions concerning behavioral or disciplinary problems experienced during his medical residency and seeking to identify his referral sources. He had also refused to produce his engagement calendars. At the same time, ETRMC and the individual defendants sought an order compelling Dr. Mileikowsky to appear and conclude his deposition. Dr. Mileikowsky moved for a protective order because defendants insisted on taking his deposition on four days in a row, rather than spread out over the calendar to accommodate Dr. Mileikowsky's schedule.

On September 18, 2000, the parties filed a stipulation setting dates for Dr. Mileikowsky's deposition and specifying that documents would be provided.

The court signed the stipulation, and put off the question of appointing a referee. Later, a discovery referee was appointed, and the parties stipulated to the appointment of a second one.

### 7. Fourth Request for Terminating Sanctions

In February 2001, defendants moved for terminating sanctions due to Dr. Mileikowsky's failure to post referee fees and refusal to attend a scheduled hearing before the discovery referee. Dr. Mileikowsky stated in his opposition that he had refused to appear before the discovery referee because he erroneously believed he had seen defendants' counsel engaged in ex parte contact with the referee. Having realized his mistake, he indicated a readiness to proceed. The referee recommended that terminating sanctions be denied and that no monetary sanctions be awarded. The court ruled in accordance with the recommendation.

In March 2001, defendants moved to compel further responses to a request for production of documents propounded by ETRMC. There were 130 requests in the set, each asking for documents that pertained to each allegation of the first amended complaint in case No. BC233153.[9] Dr. Mileikowsky had objected to them all.

In June 2001, the referee recommended that the August 2000 motion to compel further answers at deposition be granted in part and denied in part. He also recommended that a motion to compel production of documents filed by Dr. Mileikowsky be granted in part and denied in part. The court approved and followed the recommendations.

In May 2001, defendants moved to stay all discovery in the two actions until an ongoing administrative hearing was concluded.

### 8. Fifth Motion to Compel

In July 2001, ETRMC moved to compel responses to its third set of interrogatories, its fourth request for production of documents, and its first set of interrogatories and requests for production of documents in case No. BC233153, and for monetary sanctions. The third set of interrogatories and fourth request for production of documents sought documents and other evidence supporting Dr. Mileikowsky's damage claims. The requests in case No. BC233153 sought information on contentions contained in the first amended complaint. Responses had been submitted to these various discovery

---

[9] This was the first discovery pertaining to case No. BC233153; prior discovery requests pertained to the petition and first amended petition that was ultimately dismissed.

requests, but were deemed inadequate by ETRMC. On December 19, 2001, counsel informed the court that the parties had entered into stipulations concerning a number of matters, including outstanding discovery disputes. A "stipulation and order" was signed by counsel for Dr. Mileikowsky and counsel for respondents on January 10, 2002. In it, Dr. Mileikowsky agreed to "supplement[] his discovery responses by Friday, February 15, 2002." The stipulation and order contained blanks for the signature of the referee and the court, but it was apparently never signed or filed.

### 9. *Fifth Request for Terminating Sanctions*

On February 27, 2002, respondents moved for terminating sanctions on the ground that Dr. Mileikowsky had violated the stipulation by failing to provide any additional discovery. Respondents further sought $8,500 in sanctions. Dr. Mileikowsky and his new counsel claimed to have been working diligently on discovery responses, but said they were unable to complete them in time. In addition, counsel was seeking to be relieved.

By report and recommendation dated March 19, 2002, the referee recommended that the motion be granted as to both termination of the litigation and sanctions. The referee stated: "[Dr. Mileikowsky] has demonstrated a pattern of promises and stipulations for the production of discovery responses that are unfulfilled. Instead of production, [Dr. Mileikowsky] has changed counsel and repeated the pattern of delay and non-production. The Referee finds this repetition to be obstructive and willful, and in violation of [Dr. Mileikowsky's] responsibility to participate in discovery and to comply with stipulations and court orders. Sanctions are warranted under CCP 2023(a)(3), (4), and (7)."

With respect to the nature of the discovery requests, the referee found that respondents "asked for basic information on damage claims[] and contention interrogatories that are fundamental to respondents' ability to prepare a defense." Dr. Mileikowsky's counsel "stipulated that production would be complete by February 15, 2002. That stipulation, with the recommendation of the Referee, was adopted as an order of the Court [*sic*[10]]. Nevertheless, the only further production is an incomplete 'confidentiality log' prepared by counsel and produced with [Dr. Mileikowsky's] opposition to this motion. Monetary sanctions in the past have not successfully gained [Dr. Mileikowsky's] attention. Terminating sanctions are appropriate under CCP 2023(a)(7)."

Concerning the separate award of $8,500 in monetary sanctions, the referee stated: "[T]he Referee finds that monetary sanctions in the amount of $8500

---

[10] As we have said, the stipulation was never signed by the referee or the court, or filed.

are justified and necessary as an additional sanction against [Dr.] Mileikowsky, but not against current counsel. The Referee accepts the representation of counsel that substantive responses have been prepared and sent to [Dr. Mileikowsky] for review, but not returned by him. The expense of this motion and assembling the record demonstrating justification for terminating sanctions should be recovered by respondent against [Dr. Mileikowsky] personally."

On March 26, 2002, respondents requested clarification of the referee's report and recommendation. Due to the "unconsolidation" of case Nos. BS056525 and BC233153, there had been some confusion about whether both should be subject to terminating sanctions.

At some point either prior to or on April 22, 2002, Dr. Mileikowsky, acting in pro. per.,[11] asked the referee to reconsider his recommendation. The motion for reconsideration was denied because "the statutory requirements of CCP 1008 are not met" in that the request was not timely and there were no new or different facts. At the hearing on April 22, in response to the referee's comment that "it was important on March 19 that your lawyers then representing you told me that they had completed some discovery responses, had sent those responses to you, but you had not returned them," Dr. Mileikowsky said: "I do not deny it . . . ."

Prior to submitting his report and recommendation to the court, the referee clarified that the termination should be as to both of the related cases, noting that Dr. Mileikowsky was to have filed an amended complaint consolidating the operative pleadings of the two matters. On April 24, 2002, the court adopted the recommendation of the referee concerning sanctions.

Dr. Mileikowsky retained new counsel, and on May 3, 2002, moved for reconsideration and for relief under Code of Civil Procedure section 473. The motion pointed out that there was no outstanding court order at the time terminating sanctions were granted, and contended that the parties' in-court stipulation did not provide for terminating sanctions as a method of enforcement.[12] The motion also presented evidence that prior counsel had not, as represented to the referee, sent prepared responses to Dr. Mileikowsky for his

---

[11] The court granted Dr. Mileikowsky's counsel's motion to be relieved on April 12, 2002.

[12] Counsel for respondents had explained on the record to the court on December 19, 2001, that the parties had "a stipulated order which can be enforced by way of contempt of court or *issue* sanctions should [Dr. Mileikowsky] not provide the responses, as he has agreed to do." However, the written stipulation stated: "[Respondents] may file a motion for sanctions, including but not limited to, issue, evidence or *terminating sanctions*, if they do not receive [Dr. Mileikowsky's] supplemental discovery responses by [February 15, 2002]." (Italics added.)

review and signature at any time prior to the date they were due. In addition, evidence was presented that when other prior counsel sent proposed responses to Dr. Mileikowsky for review and comment, he responded promptly.

Shortly after the motion for reconsideration was filed, respondents moved ex parte to have the referee approve the parties' discovery stipulation nunc pro tunc.[13] The referee refused the request. The motion for reconsideration was denied on June 3, 2002.

On June 21, 2002, a notice of appeal was filed "from the Order Striking [Dr. Mileikowsky's] Pleadings in this case and Terminating Sanctions entered on April 24, 2002." The notice said the appeal was to include "review of any underlying or intermediate ruling or proceeding, as well as any motion brought to reconsider, or correct[,] the order, or any motion seeking relief from the order under CCP § 473 . . . ." The notice of appeal was filed under case No. BS056525, which was said to be "Related to" case No. BC233153. No separate notice was filed under case No. BC233153.

C. *Motion to Dismiss Appeal*

On June 25, 2002, respondents moved for an order striking the fourth amended complaint in case No. BC233153 and the first amended petition for writ of mandate in case No. BS056525. On July 25, it was denied without prejudice.

Respondents moved to dismiss the appeal on the ground that there was no appealable judgment or order. Apparently, the reason the trial court refused the motion to strike and refused to enter judgment in favor of respondents was the pendency of the appeal, which generally divests trial court jurisdiction. This court denied the motion to dismiss on the ground that sanction orders in amounts greater than $5,000 are appealable and that we would "proceed to review the imposition of the monetary discovery sanctions." We further stated that since there was no order dismissing the actions or striking the pleadings, "an appeal on this ground is not permissible."

## DISCUSSION

We stated in our order denying the motion to dismiss the appeal that since no order dismissing the first amended petition and fourth amended complaint had been filed, the only issues before us pertained to the monetary sanctions

---

[13] Respondents presented hearsay evidence that prior counsel had blamed Dr. Mileikowsky for the failure to have the stipulated order signed and filed by the court, telling counsel for respondents that Dr. Mileikowsky had "specifically prohibited" prior counsel from giving the court the written stipulation.

awarded. However, despite our attempt to limit the appeal, it appears from the parties' briefs that monetary sanctions were based on the same conduct that led to terminating sanctions, and the two are inextricably intertwined. Indeed, Dr. Mileikowsky's principal argument on appeal is that the monetary award, based as it was on the fees and costs incurred in prosecuting the motion for terminating sanctions, should be reversed because the motion for terminating sanctions was not appropriate and should have been denied and respondents "should not be rewarded for making an unsuccessful motion." We, therefore, turn to the issue of whether respondents' motion for terminating sanctions was well taken.

Shortly after the discovery statutes were overhauled in the late 1980's, the court in *Ruvalcaba v. Government Employees Ins. Co.* (1990) 222 Cal.App.3d 1579 [272 Cal.Rptr. 541] held that "before a court terminates a plaintiff's action for failure to comply with discovery, there must be a court order compelling plaintiff to comply with the discovery request." (*Id.* at pp. 1580–1581.) In *Ruvalcaba,* plaintiff brought an action against his insurance carrier. During the course of the litigation, the defendants moved to dismiss for failure to comply with document production requests. The moving papers showed that a request for inspection of documents had been served on plaintiff and that plaintiff had failed to respond despite two extensions of time. The moving papers also showed that "numerous times during the pendency of the matter [plaintiff] had failed to reasonably respond to other discovery devices and that previously the court had ordered compliance and sanctions against [plaintiff] and/or [plaintiff's] counsel." (*Id.* at p. 1580.)

The court first looked at the history of discovery legislation: "The code required the disobedience of a court order as a prerequisite for dismissal based upon discovery abuses and recognized that lesser sanctions, appropriate for the particular abuse, should be granted before a terminating sanction, such as dismissal, was utilized. [Citation.] Although prior case law indicated a prior order was not mandated [citations], the new legislation acknowledged that dismissal was a drastic sanction [citation] which should only be used after a party had an opportunity to comply with a court order." (*Ruvalcaba v. Government Employees Ins. Co., supra,* 222 Cal.App.3d at p. 1581.)

The court began its analysis of the new legislation with Code of Civil Procedure section 2023,[14] which addresses sanctions in general. It defines misuses of the discovery process to include: "Failing to respond or to submit to an authorized method of discovery" and "Disobeying a court order to provide discovery." (§ 2023, subd. (a)(4) & (7).) *"To the extent authorized by the section governing any particular discovery method,"* the court may, after

---

[14] Statutory references herein are to the Code of Civil Procedure unless otherwise indicated.

hearing and notice, "impose a monetary sanction"; "impose an issue sanction"; "impose an evidence sanction"; or "impose a terminating sanction." (§ 2023, subd. (b), italics added.)

Section 2031, governing document requests, the "particular discovery method" at issue in *Ruvalcaba*, provides in relevant part: "The court shall impose a monetary sanction under Section 2023 against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel a response to an inspection demand, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust. *If a party then fails to obey the order compelling a response, the court may make those orders that are just, including* the imposition of an issue sanction, an evidence sanction, or *a terminating sanction* under Section 2023." (§ 2031, subd. (*l*), italics added.) Section 2031, subdivision (n), governing failure to permit inspection, likewise provides in pertinent part: "*If a party then fails to obey an order compelling inspection, the court may make those orders that are just, including* the imposition of an issue sanction, an evidence sanction, or *a terminating sanction* under Section 2023." (Italics added.)

In *Ruvalcaba*, the court interpreted the italicized language from section 2031 as meaning that when plaintiff did not respond, "the court could have ordered [plaintiff] to respond to the discovery request and could have imposed a monetary sanction." (*Ruvalcaba v. Government Employees Ins. Co., supra,* 222 Cal.App.3d at p. 1583.) But the court was clear that more serious sanctions could only come later: "If *thereafter [plaintiff] disobeyed this court order,* [plaintiff] would do so at his own risk [citation], knowing that such a refusal provided the court with the statutory authority to impose other sanctions. Thus, the court, in its discretion, could have ordered specific facts to be taken as established, prohibited [plaintiff] from introducing certain matters into evidence, imposed monetary sanctions, or other sanctions specifically related to the offense. [Citations.] *The court also could have dismissed the action. Without the prior order directing [plaintiff] to comply, however, it was inappropriate for the court to dismiss the matter.*" (*Ibid.,* italics added.)

The court in *Ruvalcaba* came to the conclusion that terminating sanctions could not be applied despite ample evidence of prior sanctionable conduct on the part of the plaintiff with respect to earlier discovery requests. "The 3,000-page clerk's transcript in [the] matter demonstrate[d] continued discovery abuses by [plaintiff] and/or his attorney for which sanctions ha[d] already been imposed and which ha[d] resulted in needless delays and costs." (*Ruvalcaba v. Government Employees Ins. Co., supra,* 222 Cal.App.3d at p. 1583.) According to the court, despite plaintiff's earlier defalcations, until a new order was disobeyed, only monetary sanctions could be imposed. (*Ibid.*)

"[A]lthough the actions of [plaintiff] and his counsel may demonstrate a history of discovery abuses, without a disobeyed court order a terminating sanction was improperly imposed." (*Ibid.*)

In the present case, the stipulation covered ETRMC's third set of interrogatories and fourth request for production of documents in case No. BS056525, and its first set of interrogatories and requests for production of documents in case No. BC233153. Therefore, we look both to section 2030, governing interrogatories, and section 2031, governing document requests. We have already quoted the pertinent language from section 2031. Section 2030 is not substantially different. It provides in pertinent part: "The court shall impose a monetary sanction under Section 2023 against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel a further response to interrogatories, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust. [¶] *If a party then fails to obey an order compelling further response to interrogatories, the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction under Section 2023.*" (§ 2030, subd. (*l*), italics added.)

We have found no appellate authority which disagrees with *Ruvalcaba's* analysis.[15] It is true in *R.S. Creative, Inc. v. Creative Cotton, Ltd.* (1999) 75 Cal.App.4th 486, 497 [89 Cal.Rptr.2d 353], this court stated that "[s]ection 2023 authorizes terminating sanctions in the first instance in egregious cases." However, in *R.S. Creative*, the primary issue was the appropriate sanction for intentional destruction of evidence. (75 Cal.App.4th at p. 494 ["This is the first reported California case to consider terminating sanctions for spoliation of evidence . . . ."].) Moreover, at the time sanctions were imposed, there was an outstanding order requiring a party to appear at a deposition. Thus, *R.S. Creative* does not represent an example of a situation where sanctions were imposed without evidence of violation of a court order.

Since there is no dispute that the stipulation of January 2002 was never submitted to the court for signature, we agree that there was no order requiring Dr. Mileikowsky to respond to the specific interrogatories and requests for production of documents that were the subject of the dispute. The

---

[15] We found two cases permitting imposition of an evidence sanction in the first instance: *Vallbona v. Springer* (1996) 43 Cal.App.4th 1525 [51 Cal.Rptr.2d 311], and *Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27 [9 Cal.Rptr.2d 396]. The courts there did not disagree with *Ruvalcaba* that generally a party must have disobeyed a court order compelling discovery prior to imposition of other than a monetary sanction. Their holdings were based on the futility of obtaining a court order where the responding party, after willfully refusing to provide documents, claimed that the documents were nonexistent or missing. (*Vallbona, supra*, at p. 1548; *Do It Urself Moving & Storage, supra*, at p. 36.)

issue becomes whether the stipulation can be seen as tantamount to the requisite order. We see no reason why it cannot.

 "A stipulation is '[a]n agreement between opposing counsel . . . ordinarily entered into for the purpose of avoiding delay, trouble, or expense in the conduct of the action,' (Ballentine, Law Dict. (1930) p. 1235, col. 2) and serves 'to obviate need for proof or to narrow [the] range of litigable issues' (Black's Law Dict. (6th ed. 1990) p. 1415, col. 1)." (*County of Sacramento v. Workers' Comp. Appeals Bd.* (2000) 77 Cal.App.4th 1114, 1118 [92 Cal.Rptr.2d 290].) " ' A stipulation in proper form is binding upon the parties if it is within the authority of the attorneys.' " (*Bowden v. Green* (1982) 128 Cal.App.3d 65, 72 [180 Cal.Rptr. 90].) " 'The attorney is authorized by virtue of his employment to bind the client in procedural matters arising during the course of the action . . . . "In retaining counsel for the prosecution or defense of a suit, the right to do many acts in respect to the cause is embraced as ancillary, or incidental to the general authority conferred, and among these is included the authority to enter into stipulations and agreements in all matters of procedure during the progress of the trial. Stipulations thus made, so far as they are simply necessary or incidental to the management of the suit, and which affect only the procedure or remedy as distinguished from the cause of action itself, and the essential rights of the client, are binding on the client." ' " (*Blanton v. Womancare, Inc.* (1985) 38 Cal.3d 396, 403–404 [212 Cal.Rptr. 151, 696 P.2d 645].) A stipulation may result in impairment of a party's rights. "But a poor outcome is not a principled reason to set aside a stipulation by counsel." (*County of Sacramento v. Workers' Comp. Appeals Bd., supra,* 77 Cal.App.4th at p. 1121.)

 The stipulation signed by counsel for the parties here was designed to avoid the "trouble and expense" of yet another hearing on Dr. Mileikowsky's failure to respond to simple discovery requests. Like the order that would have issued, the stipulation made clear that respondent "may file a motion for sanctions, including but not limited to, issue, evidence or terminating sanctions, if they do not receive [Dr. Mileikowsky's] supplemental discovery responses by [February 15, 2002]." By signing the stipulation, counsel essentially waived Dr. Mileikowsky's right to insist on a formal order compelling responses as a precursor to an issuance of evidentiary, issue, or terminating sanctions. That the court and referee did not sign the stipulation does not negate the fact that this was the parties' agreement. In view of the parties' stipulation, the referee and the court did not err in treating the stipulation as the order required by sections 2030 and 2031.

 A decision to order terminating sanctions should not be made lightly. But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with

the discovery rules, the trial court is justified in imposing the ultimate sanction. (See *Security Pacific Nat. Bank v. Bradley* (1992) 4 Cal.App.4th 89, 98 [5 Cal.Rptr.2d 220].) Here the record is replete with evidence of Dr. Mileikowsky's failures to answer discovery requests despite numerous extensions sought and granted. Time and again, he refused to respond despite the issuance of court orders and monetary sanctions. Only the threat of terminating sanctions caused responses to be submitted. The court was not required to allow this pattern of abuse to continue ad infinitum. It did not abuse its discretion in ordering terminating sanctions.

Dr. Mileikowsky presents no reason for overturning the order imposing monetary sanctions other than the invalidity of the order imposing terminating sanctions. Because we do not agree the underlying order was invalid, we affirm the monetary sanctions assessed.

## DISPOSITION

The order for sanctions is affirmed.

Hastings, Acting P. J., and Grimes, J.,* concurred.

A petition for a rehearing was denied May 4, 2005, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied July 13, 2005. George, C. J., did not participate therein.

---

*Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.