Filed 3/4/20

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| MOOFLY PRODUCTIONS, LLC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SANDRA FAVILA, Individually and as Executor, etc.,<br><br>    Defendant and Respondent. | B294828<br><br>(Los Angeles County<br>Super. Ct. No. BC516308) |
| SANDRA FAVILA, Individually and as Executor, etc., et al.,<br><br>    Cross-complainants and Respondents,<br><br>    v.<br><br>MOOFLY PRODUCTIONS, LLC, et al.,<br><br>    Cross-defendants and Appellants. |  |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara M. Scheper, Judge. Affirmed.

---

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of the Discussion *post*, parts C. and D.

Barnhill & Vaynerov, Maxim Vaynerov; Walton & Walton, L. Richard Walton and Javad Navran for Plaintiff, Cross-defendant and Appellant Moofly Productions, LLC, and Cross-defendant and Appellant Helena Pasquarella.

Miller Barondess, Christopher D. Beatty and Bernadette M. Bolan for Defendant, Cross-complainant and Respondent Sandra Favila, Individually and as Executor, etc., and Cross-complainant and respondent Motion Graphix, Inc.

_____

Plaintiff, cross-defendant, and appellant Moofly Productions, LLC (Moofly) challenges the superior court's judgment in favor of defendant, cross-complainant, and respondent Sandra Favila, the executrix of the Estate of Richard Corrales, and cross-complainant and respondent Motion Graphix, Inc. (collectively the Estate). Moofly sued Favila for actions the Estate took when attempting to collect on a judgment in a previous, related case. The Estate filed a cross-complaint, accusing Moofly, as well as its owner, cross-defendant and appellant Helena Pasquarella, and Pasquarella's ex-husband, Raleigh Souther, of fraudulent transfers and other causes of action. Moofly contends that the superior court erred by issuing terminating sanctions against it, and also contends that the court erred in several respects in the trial that ended with a judgment in favor of the Estate on its cross-complaint. We affirm.[1]

_____

[1] The Estate also filed a motion to dismiss this appeal because Moofly had not complied with the terms of the trial court's judgment. We deny that motion.

## FACTS AND PROCEEDINGS BELOW

This appeal is the latest stage in a long-running dispute involving parties who have been litigating against one another under various captions in federal and state court at both the trial and appellate level since 2007. We will describe only those facts germane to this appeal.

In 2000, Souther and Richard Corrales founded a company called Motion Graphix, Inc. (Motion), which specialized in lenticular photography, a technology for creating pictures that change appearance depending on the angle from which they are viewed. Corrales owned 51 percent of Motion, and Souther owned the remaining 49 percent. By 2005, the two owners had become estranged. In November 2005, Corrales died.

In January 2007, Souther transferred all of Motion's assets from Motion to Get Flipped, Inc., owned entirely by Souther and his wife, Pasquarella. Souther then purported to dissolve Motion and forged a signature on a document filed with the Employment Development Department in an attempt to make Favila, the executrix of Corrales's Estate, responsible for Get Flipped's unpaid payroll taxes.

The Estate filed suit against Souther and Get Flipped, and in 2010 obtained a judgment of $3,417,112.70 in damages and interest. The court also imposed a constructive trust on 51 percent of Get Flipped's assets, representing the Estate's share of the assets that had been transferred from Motion.

Following the entry of judgment, Souther and Pasquarella created yet another company, Moofly, doing business as 3D Cheeze. Pasquarella owned 90 percent of the new company, and Souther owned the remaining 10 percent.[2] In 2011, Get Flipped announced on social media that it was "rebranding" as "Moofly/3D Cheeze" and transferred all of its assets to Moofly.

In 2013, Moofly sued Favila in her capacity as executrix of the Estate in the superior court, alleging causes of action for intentional interference with prospective economic advantage, unfair competition, and related claims. Moofly claimed that, in order to divert business from Moofly, the Estate sent letters to Moofly's clients stating that Moofly was infringing on the Estate's intellectual property. The Estate filed a cross-complaint, which was composed primarily of state law causes of action for fraudulent transfer, conversion, and unfair competition, but also included a federal cause of action for copyright infringement.

The Estate removed the case to federal district court on the basis of the copyright infringement claim. While the case was pending in federal court, Moofly failed to respond to the Estate's discovery requests on several occasions. A magistrate judge eventually recommended that the district court issue terminating sanctions and dismiss Moofly's complaint because "Moofly has repeatedly failed to abide by its basic discovery obligations, including failing to provide initial disclosures, failing to meet and confer, failing to participate in the joint stipulation process, and failing to respond to discovery requests. Further, Moofly has repeatedly failed to abide by this [c]ourt's orders to provide discovery responses and to pay sanctions for failing to produce the discovery on time."

---

[2] In its appellate brief, Moofly claims that Pasquarella now owns 100 percent of Moofly.

The district court addressed the magistrate judge's recommendation together with a motion to dismiss the Estate's cause of action for copyright infringement. The court dismissed the Estate's copyright infringement claim for failure to state a claim. (See Fed. Rules Civ. Proc., rule 12(b)(6); 28 U.S.C.) Because the remaining claims in the litigation arose primarily under California law, the court remanded the case to the superior court for further proceedings. The district court found the magistrate judge's report "thorough and well-reasoned" and was "persuaded that the conclusions and suggested remedies laid out in the [r]eport are well-supported by the record." Nevertheless, the district court declined to dismiss Moofly's complaint and, "in the interests of comity and deference," left it to the superior court to decide whether to issue terminating sanctions.

On remand, the Estate filed a motion requesting that the superior court adopt the magistrate judge's report and issue terminating sanctions. The superior court granted the motion, finding that "the entire course of Moofly's behavior demonstrates its utter disregard for the court as well as court procedures," and that "Moofly's persistent and repeated failure to pay the monetary sanctions ordered support a finding that lesser sanctions have proven ineffective in gaining Moofly's compliance."

Following the dismissal of Moofly's complaint, the case proceeded to trial on the Estate's cross-complaint. The superior court bifurcated the trial, beginning with a court trial on the causes of action for fraudulent transfer and injunctive relief.

The superior court found that the transfer of assets from Get Flipped to Moofly was a fraudulent transfer designed to prevent the Estate from collecting on the judgment. The court granted a mandatory injunction directing plaintiffs to transfer

5

back to Get Flipped all the assets that had previously been transferred from Get Flipped to Moofly. The court also ordered restitution of the profits plaintiffs earned from the fraudulently transferred property, and issued a prohibitory injunction to prevent plaintiffs from any further transfers of property.[3]

## DISCUSSION

Moofly makes four claims on appeal. It contends: (1) that the superior court erred by denying a jury trial on the fraudulent transfer cause of action; (2) that the superior court abused its discretion by issuing terminating sanctions on its complaint; (3) that the superior court exceeded its jurisdiction by awarding the return of derivative copyrighted materials, an issue that Moofly contends must be decided in federal court; and (4) that the superior court erroneously included Pasquarella as a party liable under the judgment after finding that Moofly alone was the recipient of the fraudulent transfer. We affirm.

### A.    *Jury Trial on Fraudulent Transfer Cause of Action*

Moofly contends that the superior court erred by denying its request for a jury trial on its cause of action for fraudulent transfer. We disagree. To provide the relief sought in this cause of action, the superior court was required to apply equitable doctrines, and Moofly was therefore not entitled to a jury trial.

The California Constitution guarantees the right to a jury trial (see Cal. Const., art. I, § 16), but "the right so guaranteed . . . is the right as it existed at common law in 1850, when the Constitution was first adopted . . . . As a general

---

[3] After its victory in the first phase of the trial, the Estate voluntarily dismissed the remaining causes of action in the cross-complaint.

6

proposition, '[t]he jury trial is a matter of right in a civil action at law, but not in equity.' " (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8 (*C & K Engineering*).) The Code of Civil Procedure also guarantees the right to a jury trial "[i]n actions for the recovery of specific, real, or personal property, with or without damages" (Code Civ. Proc., § 592),[4] but that provision "is historically based and does not expand the jury trial right beyond its common law scope." (*Corder v. Corder* (2007) 41 Cal.4th 644, 656.)

Our Supreme Court has described the following method for determining whether a party has a right to a jury trial: " ' "If the action has to deal with ordinary common-law rights cognizable in courts of law, it is to that extent an action at law. In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the gist of the action. A jury trial must be granted where the gist of the action is legal, where the action is in reality cognizable at law." ' ([*People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 299], fn. omitted . . . .) On the other hand, if the action is essentially one in equity and the relief sought 'depends upon the application of equitable doctrines,' the parties are not entitled to a jury trial." (*C & K Engineering*, *supra*, 23 Cal.3d at p. 9.)

In most instances, courts have considered suits to reverse fraudulent transfers to be actions at equity. In *Bank of America v. Greenbach* (1950) 98 Cal.App.2d 220, the court held that "where no individual money damages are sought, and where the plaintiff seeks only to rescind and to recover the fraudulently

---

[4] Unless otherwise specified, subsequent statutory references are to the Code of Civil Procedure.

conveyed assets, the action is equitable, and a jury trial is not a matter of right." (*Id.* at p. 229.) Similarly, the court in *Pedro v. Soares* (1937) 18 Cal.App.2d 600 described an action to set aside a fraudulent conveyance as "an action in equity." (*Id.* at p. 608.)

Nevertheless, Moofly argues that it was entitled to a jury trial under *Wisden v. Superior Court* (2004) 124 Cal.App.4th 750, 756–757, in which the court held that the right to a jury trial applied to a fraudulent conveyance cause of action. In that case, however, the court limited its holding to actions "to recover a fraudulent conveyance of a determinate sum of money." (*Id.* at p. 757.) The court relied on *Granfinanciera, S. A. v. Nordberg* (1989) 492 U.S. 33 (*Granfinanciera*), in which the United States Supreme Court reviewed the history of fraudulent transfer actions at law and equity prior to 1791 and concluded that the proper form of the suit depended on the nature of the property to be recovered: " 'If the subject matter is a chattel, and is still in the grantee's possession, an action in trover or replevin would be the trustee's remedy; and if the fraudulent transfer was of cash, the trustee's action would be for money had and received. Such actions at law are as available to the trustee today as they were in the English courts of long ago. If, on the other hand, the subject matter is land or an intangible, or the trustee needs equitable aid for an accounting or the like, he may invoke the equitable process, and that also is beyond dispute.' " (*Id.* at p. 44, quoting *Buzard v. Houston* (1886) 119 U.S. 347, 352–353.)[5]

---

[5] A standard jury instruction applicable in actions to void transfers under the Uniform Voidable Transactions Act (see Civ. Code, § 3439.04) draws the same distinction. The Directions for Use of CACI No. 4200 states that there is a right to a jury trial in cases where the plaintiff is seeking monetary relief, but not where the plaintiff seeks nonmonetary relief.

An action to recover a fraudulent conveyance of a determinate sum of money must proceed under law because in such a case, "a complete remedy is available at law, and equity will not countenance an action when complete relief may be obtained at law." (*Granfinanciera*, *supra*, 492 U.S. at p. 49, fn. 7.) In this case, however, no complete remedy was available at law. The Estate sought to reverse the transfer of at least three different classes of property: (1) chattels, such as computer equipment; (2) money, in the form of "proceeds and profits" of the fraudulently transferred property;[6] and (3) intangibles, such as "software codes . . . ; all trademarks, copyrights, patents and domain names . . . ; all inventions, designs, know-how, trade secrets, improvements, formulae, works of authorship and similar assets . . . ; phone numbers; websites; improvements and derivatives of those assets." No proceeding at law could have provided the Estate "a plain, complete, speedy, and adequate remedy" (*Andal v. City of Stockton* (2006) 137 Cal.App.4th 86, 91), in the way that an action for money had and received could have provided relief to the plaintiffs in *Granfinanciera* and *Wisden*. Even the money the Estate demanded was not a determinate sum, but rather required the equitable remedy of an accounting to determine the amount of profits Moofly,

---

[6] In its cross-complaint, the Estate claimed that it was "entitled to an award of exemplary and punitive damages against" Moofly, Pasquarella, and Souther for fraudulent transfer. In the hearing to determine whether Moofly was entitled to a jury trial, however, the Estate stipulated that it was not seeking monetary damages for fraudulent transfer, and the trial court did not award the Estate any damages. We need not and do not decide whether a jury trial would have been required if the Estate had not waived this claim.

Pasquarella, and Souther obtained from fraudulently transferred property.

Nor do we perceive any way the superior court could have divided the fraudulent transfer cause of action and tried the equitable portions separately from the legal portions. One of the key questions in any action for fraudulent transfer is whether the transferor "receiv[ed] a reasonably equivalent value in exchange for the transfer or obligation." (Civ. Code, § 3439.04, subd. (a)(2).) The evaluation of that question required considering all of the property Moofly received, and would not have allowed separate trials for the chattels, cash, and intangibles.

Because the Estate's cause of action for fraudulent transfer was "essentially one in equity and the relief sought 'depend[ed] upon the application of equitable doctrines,' " Moofly was "not entitled to a jury trial." (*C & K Engineering, supra,* 23 Cal.3d at p. 9.)

### B. *Propriety of Terminating Sanctions*

Moofly contends that the superior court abused its discretion by granting the Estate's motion for terminating sanctions. Moofly argues that it did not receive proper notice of the potential for terminating sanctions, and that there were insufficient grounds for issuing terminating sanctions. We are not persuaded.

Moofly's claim that it did not receive adequate notice of the Estate's motion for terminating sanctions is without merit. The Estate filed a notice of motion in which it stated that it was requesting that the superior court "[a]dopt[ ] and implement[ ] the [f]inal [r]eport and [r]ecommendation" of the federal magistrate judge, "which called for the imposition of specified

10

terminating, evidentiary[,] and issue sanctions" against Moofly. The Estate served the notice of motion on Moofly's attorneys. This was sufficient to satisfy the relevant notice requirements. (See § 1010.) Furthermore, Moofly filed a "brief in opposition to [the Estate's] motion to dismiss" (capitalization omitted), which argued that terminating sanctions were improper under the circumstances. The superior court held a hearing, which Moofly's attorneys attended, before granting the motion for terminating sanctions. If there was any defect in the notice, Moofly waived its objection by responding and participating in the hearing regarding sanctions. (See *Tate v. Superior Court* (1975) 45 Cal.App.3d 925, 930 ["a party who appears and contests a motion in the court below cannot object on appeal or by seeking extraordinary relief in the appellate court that he had no notice of the motion or that the notice was insufficient or defective"].)

We also reject Moofly's contention that there were insufficient grounds to justify the imposition of terminating sanctions in this case. "A court, after notice and an opportunity for a hearing, may impose sanctions on a party, person, or attorney for misuse of the discovery process. (§ 2023.030.) Section 2023.030 describes the types of sanctions that a court may impose, including monetary, issue, evidence, terminating, and contempt sanctions. ([§ 2023.030], subds. (a)–(e).)" (*New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1422 (*New Albertsons*).) A trial court may impose sanctions, however, only "[t]o the extent authorized by the chapter governing any particular discovery method or any other provision of this title." (§ 2023.030.) "This means that the statutes governing the particular discovery methods limit the permissible sanctions to those sanctions provided under the applicable governing statutes." (*New Albertsons*, *supra*,

11

168 Cal.App.4th at p. 1422.)  When a party fails to respond to the opposing party's interrogatories, the court should begin by imposing monetary sanctions and ordering the party to respond. (See § 2030.290, subd. (c).)  "If a party then fails to obey an order compelling answers, the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction." (*Ibid.*)  In general, a court may not impose issue, evidence, or terminating sanctions unless a party disobeys a court order.  (See *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 277, disapproved on another ground by *Mileikowsky v. West Hills Hospital & Medical Center* (2009) 45 Cal.4th 1259, 1273.)  "The statutory requirement that there must be a failure to obey an order compelling discovery before the court may impose a nonmonetary sanction for misuse of the discovery process provides some assurance that such a potentially severe sanction will be reserved for those circumstances where the party's discovery obligation is clear and the failure to comply with that obligation is clearly apparent." (*New Albertsons*, *supra*, 168 Cal.App.4th at p. 1423.)  In addition, terminating sanctions are appropriate only if a party's failure to obey a court order actually prejudiced the opposing party.  (See *Morgan v. Ransom* (1979) 95 Cal.App.3d 664, 669–670.)

In this case, the requirements for terminating sanctions were met.  The magistrate judge recommended terminating sanctions in part because Moofly failed to respond to interrogatory responses after the court ordered it to do so, and failed to send anyone to attend the hearing in response to the Estate's motion for sanctions.  The superior court agreed, ordering terminating sanctions because of "Souther's failure to appear at [the] deposition which necessitated a motion to extend

12

the discovery deadline, followed by Moofly's failure to respond to interrogatories even after being ordered to do so."  In addition, Moofly's noncompliance prejudiced the Estate.  As the magistrate judge noted, the Estate "had to expend untold sums of money in attorney's fees in their efforts to obtain the most basic discovery from [d]efendants.  And, despite the fact that the [c]ourt ordered Moofly to produce discovery during the discovery period, Moofly never did.  When Moofly finally produced it after discovery was closed, it was too late for [d]efendants to investigate Moofly's responses."

Moofly does not deny any of these facts regarding its conduct in federal court.  Instead, Moofly contends that the superior court abused its discretion by ordering terminating sanctions because, by the time the case was before the superior court, Moofly had served its belated interrogatory responses.  At the time the superior court granted terminating sanctions, the only remaining defect in its performance was its failure to pay monetary sanctions.  According to Moofly, its prior conduct in federal court cannot serve as a basis for sanctions in the superior court.

We are not persuaded.  Moofly has cited no authority, and we are aware of none, holding that the superior court may not consider prior conduct in the same case in federal court as a basis for imposing sanctions.  The federal district court elected to withhold a decision on sanctions "in the interests of comity and deference," not in order to give Moofly a reprieve for its misconduct.  And Moofly's misconduct was not limited to failing to respond to interrogatories.  As the magistrate judge noted, Moofly failed to serve the Estate with its required initial disclosures and Souther failed to appear at his deposition until

13

the Estate filed motions to compel, and Moofly's attorneys failed to attend numerous hearings as scheduled.

We agree that strict standards must be met before terminating sanctions are appropriate: "A decision to order terminating sanctions should not be made lightly. But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the superior court is justified in imposing the ultimate sanction." (*Mileikowsky v. Tenet Healthsystem, supra,* 128 Cal.App.4th at pp. 279–280.) Moofly's conduct was sufficiently egregious that the superior court did not abuse its discretion by imposing this most extreme sanction. Moofly effectively failed to participate in the discovery process until after discovery was closed, then finally produced interrogatory responses that contradicted its earlier statements, leaving the Estate unable to prepare adequately for trial. Even then, Moofly failed to pay the monetary sanctions the superior court ordered. There is ample support for the magistrate judge's statement that "the [c]ourt has tried alternatives but they seem to have had no impact on Moofly."

### C. *Jurisdiction Over Copyright Claims*

Moofly contends that the superior court exceeded its jurisdiction by ordering it to turn over certain copyrighted materials such as software, works of authorship, and websites, as well as assets "related to" the copyrighted materials. According to Moofly, any assets related to copyrighted materials would be derivative works, and federal district courts have exclusive jurisdiction to determine what is a derivative work. Moofly argues that the superior court therefore lacked jurisdiction to issue its order. We disagree.

In support of its argument, Moofly cites section 1338 of title 28 of the United States Code, which provides that "[t]he [federal] district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights." In addition, the federal Copyright Act provides that "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . are governed exclusively by" federal copyright law. (17 U.S.C. § 301.)

The Ninth Circuit has "adopted a two-part test to determine whether a state law claim is preempted by the [Copyright] Act. We must first determine whether the 'subject matter' of the state law claim falls within the subject matter of copyright as described in [sections 102 and 103 of title 17 of the United States Code]. Second, assuming that it does, we must determine whether the rights asserted under state law are equivalent to the rights contained in [section 106 of title 17 of the United States Code], which articulates the exclusive rights of copyright holders." (*Laws v. Sony Music Entertainment, Inc.* (9th Cir. 2006) 448 F.3d 1134, 1137–1138, fns. omitted (*Laws*).)

15

Under this test, federal courts have often held that state law claims seeking to vindicate rights similar to copyright are preempted by federal law. For example, in *Laws*, the court held that a singer could not use California's common law right to privacy to prevent a recording company from releasing compact discs and music videos featuring the singer's voice. (*Laws*, *supra*, 448 F.3d at pp. 1144–1145.) The court reasoned that the singer's attempt to assert her right to privacy over the recordings was essentially the same as asserting copyright over the recordings. (*Ibid.*; see also *Maloney v. T3Media, Inc.* (9th Cir. 2017) 853 F.3d 1004, 1019 [right to publicity of photographs]; *Fleet v. CBS, Inc.* (1996) 50 Cal.App.4th 1911, 1919–1921 [right to publicity of image and likeness in a motion picture.])

In this case, even if we assume that the Estate's claim falls within the subject matter of copyright, the rights the Estate has asserted are not equivalent to copyright. The Estate seeks only the return of property fraudulently transferred from Get Flipped to Moofly. Some of the property in question may have copyrights associated with it, but unlike in *Laws* and related cases that Moofly cites, this litigation involves no questions about restrictions on reproducing, displaying, or distributing copyrighted materials. Given the vast scope of copyright law, which extends to virtually all "original works of authorship fixed in any tangible medium of expression" (17 U.S.C. § 102), if Moofly's interpretation were correct, it would require virtually all disputes over a company's assets to be heard in federal court.

The federal district court implicitly agreed with our determination. This case originally involved a claim of copyright infringement, but the district court dismissed it and remanded the case to the superior court because it found the remaining causes of action "arise under California law" and would be "better

16

handle[d]" in the superior court. In particular, the district court, quoting *Dead Kennedys v. Biafra* (N.D. Cal. 1999) 37 F.Supp.2d 1151, 1153, noted that " '[a]n action for an accounting or determination of ownership as between alleged co-owners is founded in state law and does not arise under the copyright laws.' " (Boldface omitted.) To hold that the federal court had exclusive jurisdiction over the remaining claims in this case after the federal court found to the contrary would leave the Estate with no venue to bring its claims.

### D.    *Inclusion of Pasquarella in the Judgment*

Moofly contends that the superior court erred by including Pasquarella as a party liable for the judgment. Pasquarella owns 100 percent of Moofly, and formerly owned part of Get Flipped. Moofly's argument proceeds as follows: In an action for fraudulent transfer, a creditor's remedy is "[a]voidance of the transfer or obligation." (Civ. Code, § 3439.07, subd. (a)(1).) The superior court found that Pasquarella and her ex-husband Souther "transferred all of Get Flipped's assets into Moofly." Pasquarella therefore has no assets from the transfer, and the Estate's remedy lies only with Moofly.

This argument is without merit. Although the superior court found that Pasquarella and Souther initially transferred all of Get Flipped's assets to the newly formed Moofly, the court found that, approximately five years later, Souther conditionally transferred the company's copyrights and trademarks to Pasquarella. A creditor may obtain a judgment not merely against the initial transferee, but also against a subsequent transferee. (Civ. Code, § 3439.08, subd. (b)(1).) Furthermore, Moofly did not include a reporter's transcript of the trial proceedings in the record on appeal, and we cannot rule

17

out the possibility that there was evidence presented at trial of further transfers to Pasquarella. (See *Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1178 [appellant bears burden to provide adequate record to demonstrate error].)

## DISPOSITION

The judgment of the trial court is affirmed. Respondents are awarded their costs on appeal.

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>.


ROTHSCHILD, P. J.

We concur:



CHANEY, J.



BENDIX, J.