[No. B060139. Second Dist., Div. One. June 10, 1992.]

DO IT URSELF MOVING & STORAGE, INC., et al., Plaintiffs and Appellants, v.
BROWN, LEIFER, SLATKIN & BERNS et al., Defendants and Respondents.

COUNSEL

Ramsey, Prestholt & Holmberg and Willi H. Siepmann for Plaintiffs and
Appellants.

Musick, Peeler & Garrett, Eric L. Troff and Robert G. Warshaw for Defend-
ants and Respondents.

OPINION

DEVICH, J.—Do It Urself Moving & Storage, Inc. (DIU), Robert Winet,
and Melinda Winet (collectively plaintiffs) appeal from the summary judg-
ment entered in favor of Brown, Leifer, Slatkin & Berns (BLSB), Eugene
Brown, and Gerald Slatkin (collectively defendants). We reverse.

## BACKGROUND

On October 5, 1988, DIU filed a complaint against defendants and others
alleging causes of action for breach of contract, negligence, breach of
fiduciary duty, and accounting.[1]

Trial was scheduled to commence on April 16, 1990. On March 12, 1990,
following the denial of its ex parte motion to continue the trial date, DIU
noticed a motion to continue the trial date for six months. In its points and
authorities, DIU indicated that "[t]he primary reason there is good cause for
this short continuance is that DIU will be totally unable to prove liability and
damages against [defendants] . . . until DIU's recently retained accountants
have completed their audit of DIU's and [defendants'] records."

On April 11, 1990, prior to the hearing on plaintiffs' motion, the parties
entered a stipulation (the stipulation) whereby, inter alia, they agreed to a

---

[1] A first amended complaint alleging the same causes of action, but not seeking an
accounting, was filed on November 22, 1989.

court trial; the trial would be continued "to a date not earlier than December 1, 1990"; "[t]he audit being conducted by DIU [was to] be completed no later than August 1, 1990, and the written report of said audit [was to] be [made] available to all parties after that date"; the Winets were added as plaintiffs to the action; and "all claims for punitive damages and intentional conduct" were dismissed with prejudice.

On September 28, 1990, counsel for defendants requested a copy of the audit pursuant to the stipulation. On October 10, 1990, counsel for plaintiffs informed counsel for defendants that the "audit was complete, or nearly complete." Plaintiffs' counsel also suggested that settlement discussions be arranged. Such a meeting was scheduled for October 17, 1990. At this meeting, plaintiffs' counsel informed defense counsel that an audit was not possible, and offered a six-page summary of plaintiffs' accountants' preliminary findings in place of the audit report. This summary referred to supporting documentation, but did not contain copies of such documentation. Defense counsel was promised that copies of the summary and the supporting documentation would be provided.

On February 28, 1991, following several unsuccessful requests for the audit report and the supporting documentation, defense counsel sent plaintiffs' counsel a letter indicating that defendants would move to exclude such evidence from trial should plaintiffs persist in withholding the information.

On April 25, 1991, defendants filed a motion to impose an evidence preclusion sanction pursuant to Code of Civil Procedure sections 2021 and 2023.[2] On May 10, 1991, the trial court granted the motion, noting:

"Plaintiffs shall be precluded from introducing any accounting evidence in support of their complaint for the following reasons. This matter was

[2]All statutory references are to the Code of Civil Procedure.

Section 2021 provides, in pertinent part:

"Unless the court orders otherwise, the parties may by written stipulation . . . modify the procedures provided by this article for other methods of discovery."

Section 2023 provides, in relevant part:

"(a) Misuses of the discovery process include, but are not limited to, the following:

". . . . . . . . . . . . . . . . . . . . . . . .

"(4) Failing to respond or submit to an authorized method of discovery.

". . . . . . . . . . . . . . . . . . . . . . . .

"(b) To the extent authorized by the section governing any particular discovery method or any other provision of this article, the court, after notice to any affected party, person, or attorney, and after opportunity for hearing, may impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process.

". . . . . . . . . . . . . . . . . . . . . . . .

"(3) The court may impose an evidence sanction by an order prohibiting any party engaging in the misuse of the discovery process from introducing designated matters in evidence."

originally set for trial over a year ago. At the last minute the parties entered into a stipulation that the trial go before a retired judge, discovery would be continued and that a completed accounting would be completed before August 1, 1990. As the stipulation stated: 'The primary reason . . . . for this short continuance is that DIU will be TOTALLY unable to prove liability and damages against the accountants . . . until DIU's RECENTLY retained accountants have completed their audit . . .'[3] The stipulation then went on to state that the audit was ongoing and would be completed in four months. Now, more than 13 months later the audit has not yet been completed and the court has in effect been told that it will never be completed. Moreover counsel for plaintiffs have failed to provide any back up documentation to the minuscule report that has been provided and even that was not sent until such time as permission had been received from another lawyer in a totally unrelated case. This leads the court to wonder if the other counsel had not consented would counsel have refused to turn over the information.

"Finally the weakness of plaintiffs['] position is underscored by plaintiffs offering to stipulate to 'the use of any audit or accounting previously provided by' [] defendants.

"Counsel was to have turned over information to defense counsel by last September at the latest. They have not even bothered to answer calls much less turn over the required information. Finally this case which was supposed to have been tried last April has now been delayed more than a year and it is still no closer to trial than it was at the time of the 'short continuance'. The court feels counsel for plaintiffs have misused the discovery process and accordingly grants the requested sanctions."

On May 17, 1991, defendants filed a motion for summary judgment on the ground that plaintiffs would be unable to prove their case without the evidence the trial court ordered stricken. In a declaration submitted by plaintiffs in opposition to the summary judgment motion, plaintiffs' accountant stated: "Assuming that the court does not allow any evidence of the work we performed in our attempted accounting of DIU's records, I could still testify, based on my review of photocopies of records received directly from [BLSB], as to the negligence of [BLSB] in its supervision and direction of the activities of Marcia Gale, DIU's bookkeeper."

On May 20, 1991, plaintiffs filed alternative motions for reconsideration or clarification of the evidence preclusion order. In a supporting declaration,

[3]As noted above, this statement was contained in the points and authorities filed in support of DIU's noticed motion for continuance; it does not appear in the stipulation.

plaintiffs' counsel stated: "6. It should be further pointed out that the report of the [accountants'] findings, dated March 28, 1991 was sent to defense counsel on May 3, 1991. The copies of supporting evidence pertaining to the March 28, 1991 report were obtained on May 17, 1991 and messengered to defense counsel on May 17, 1991. [¶] 7. Defendants are currently in possession of all relevant financial evidence that plaintiffs' [*sic*] plan to use at the time of trial and no new trial date has been scheduled. Therefore, defendants have not been prejudiced by the delay in obtaining the accounting evidence."

The parties' motions were heard together on June 14, 1991. The minute order of that date provides: "The motion for reconsideration is denied. Plaintiffs have delayed this case for more than a year, have failed to participate in the discovery process and in essence still admitted to the court at the last status conference that there is no way of proving that they have suffered any damages. Additionally, in its original granting of the motion the court set forth numerous reasons why the motion should be granted including the fact that [ ] plaintiffs had granted themselves a trial continuance for over a year by abusing the discovery process. Now, with a straight face, they are attempting to use the lack of a trial date as a reason for reconsideration. [¶] . . . The motion for summary judgment is granted. Plaintiffs cannot prove amount of damages."

## ISSUES

Plaintiffs contend that the trial court abused its discretion by precluding admission of plaintiffs' accounting evidence and erred in granting summary judgment.

## DISCUSSION

### 1. *Evidentiary Sanctions*

Plaintiffs assert the trial court "committed reversible error by imposing evidentiary sanctions . . . which were, in effect, terminating sanctions." Specifically, although conceding "that they may have been dilatory in promising what they could not deliver [i.e., the audit reports]," plaintiffs argue the trial court abused its discretion since (a) "the motion for evidentiary sanctions was the first motion to deal with discovery issues in the case, and there was no previous court order on the specific issue of the accounting report"; (b) "discovery sanctions, which are purely punitive and do not seek the objects of the discovery[,] may not be imposed"; (c) plaintiffs' "noncompliance was *not* willful and was at most negligent and based on a misjudgment"; (d) less drastic sanctions were available; and (e) defendants were not prejudiced "other than that inherent in any delay." We disagree.

█ "The order of the trial court is presumed correct and all intendments and presumptions are indulged to support the order on matters to which the record is silent. It is [the] appellants' burden to affirmatively demonstrate error and, where the evidence is in conflict, this court will not disturb the trial court's findings. [Citations.]

"· . . . . . . . . . . . . . . . . . . . . . . . .

█ "Discovery sanctions 'should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery.' [Citations.] ' "The trial court has a wide discretion in granting discovery and by the provisions of section 2034 . . . it is granted broad discretionary powers to enforce its orders but its powers are not unlimited. . . . [¶] The sanctions the court may impose are such as are suitable and necessary to enable the party seeking discovery to obtain the objects of the discovery he seeks, but the court may not impose sanctions which are designed not to accomplish the objects of discovery but to impose punishment. [Citations.]" ' [Citations.]" (*Laguna Auto Body* v. *Farmers Ins. Exchange* (1991) 231 Cal.App.3d 481, 487-488 [282 Cal.Rptr. 530].)

a. *Prior Court Order*

█ Without citation of authority, plaintiffs present the conclusional argument that the trial court abused its discretion since "the motion for evidentiary sanctions was the first motion to deal with discovery issues in the case, and there was no previous court order on the specific issue of the accounting report."

█ Initially, we note the well-settled rule that " '[a] point which is merely suggested by [a party's] counsel, with no supporting argument or authority, is deemed to be without foundation and requires no discussion.' [Citation.]" (*Schaeffer Land Trust* v. *San Jose City Council* (1989) 215 Cal.App.3d 612, 619, fn. 2 [263 Cal.Rptr. 813].)

█ Moreover, while the cases and treatises have interpreted the Civil Discovery Act of 1986 (§ 2016 et seq.), and the statutory scheme which preceded it, to require that, prior to the imposition of sanctions harsher than monetary sanctions, a party must have disobeyed a court order compelling discovery (see, e.g., *Young* v. *Rosenthal* (1989) 212 Cal.App.3d 96, 114 [260 Cal.Rptr. 369]; *Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 789 [149 Cal.Rptr. 499]; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1991) ¶ 8:10, p. 8A-6; Civil Discovery Practice in Cal. (Cont.Ed.Bar 1988) § 8.93, p. 516; New Civil Discovery Act (The

Rutter Group 1986) ¶ 8:734, pp. 202-203), these authorities are distinguishable from the circumstances of the case at bench. Here, it is conceded that plaintiffs are unable to provide the promised items of discovery. Under the circumstances of this case, a warning to plaintiffs, in the form of a formal order to comply, would have been futile. (See *County of El Dorado* v. *Schneider* (1987) 191 Cal.App.3d 1263, 1277 [237 Cal.Rptr. 51].)

### b. *Punitive Sanctions*

■ Plaintiffs characterize the evidentiary sanctions imposed by the trial court as "punitive," and assert that such sanctions "do not seek the objects of the discovery."

Contrary to plaintiffs' assertion, the trial court's evidentiary sanction was not punitive; rather, "[i]n choosing this sanction, the court was attempting to tailor the sanction to the harm caused by the withheld discovery. [Citation.]" (*Sauer* v. *Superior Court* (1987) 195 Cal.App.3d 213, 229 [240 Cal.Rptr. 489]; see also *Wilson* v. *Jefferson* (1985) 163 Cal.App.3d 952, 958-959 [210 Cal.Rptr. 464]; *Caryl Richards, Inc.* v. *Superior Court* (1961) 188 Cal.App.2d 300, 305 [10 Cal.Rptr. 377].)

### c. *Willful Noncompliance*

■ "The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action. [Citations.] Only two facts are absolutely prerequisite to imposition of the sanction: (1) there must be a failure to comply . . . and (2) the failure must be wilful [citation]." (*Calvert Fire Ins. Co.* v. *Cropper* (1983) 141 Cal.App.3d 901, 904 [190 Cal.Rptr. 593].)

It is beyond dispute that plaintiffs failed to timely comply with their discovery obligations. With regard to the willfulness of their noncompliance, plaintiffs urge that their conduct "was at most negligent." Contrary to this characterization of their actions, the record is replete with instances of plaintiffs' attempts to delay trial in this matter and withhold promised items of discovery. The trial court's determination that plaintiffs have misused the discovery process is amply supported by the record.

### d. *Less Drastic Alternatives*

■ Again without citation to authority, plaintiffs assert that the "court had at its disposal other potential sanctions, especially monetary ones, which would have been less drastic than the ones at hand." However, the question

before this court is not whether the trial court should have imposed a lesser sanction; rather, the question is whether the trial court abused its discretion by imposing the sanction it chose. (*Laguna Auto Body* v. *Farmers Ins. Exchange, supra,* 231 Cal.App.3d at p. 491.) Moreover, imposition of a lesser sanction would have permitted plaintiffs to benefit from their stalling tactics. (*Sauer* v. *Superior Court, supra,* 195 Cal.App.3d at p. 230.) The trial court did not abuse its discretion by tailoring the sanction to the particular abuse. (*Id.* at p. 229.)

### e. *Prejudice*

Finally, plaintiffs argue that defendants were not prejudiced "other than that inherent in any delay." However, defendants did not have a burden of showing that they were prejudiced by plaintiffs' dilatory conduct. As the moving parties, defendants were only required to demonstrate plaintiffs' willful failure to comply with discovery. (*Calvert Fire Ins. Co.* v. *Cropper, supra,* 141 Cal.App.3d at p. 904.) Moreover, any sanction other than one which precluded plaintiffs from introducing the withheld discovery would have forced defendants to proceed to trial without the benefit of the bargained-for evidence. (Cf. *Sauer* v. *Superior Court, supra,* 195 Cal.App.3d at p. 230.)

### 2. *Summary Judgment*

Plaintiffs assert that the trial court erred in granting summary judgment. We agree.

The gravamen of defendants' summary judgment motion was that plaintiffs' assertion in the March 12, 1990 motion for continuance that they will be unable to prove either liability or damages without the accounting audit evidence constituted a judicial admission, and entitled defendants to judgment in their favor. Indeed, in granting summary judgment, the trial court noted that "plaintiffs cannot prove amount of damages."

Preliminarily, we note that defendants' attempt to elevate an unsworn statement made as part of the points and authorities supporting a motion to the level of a judicial admission is unfounded. However, even if such a statement could be considered a judicial admission, summary judgment would nevertheless be inappropriate.

As this court indicated in *United Community Church* v. *Garcin* (1991) 231 Cal.App.3d 327, 338 [282 Cal.Rptr. 368], "[o]n a motion for summary judgment or [summary adjudication of issues], the burden is always on the

moving party to show there is no triable issue of material fact. [Citation.] . . . Until this is done, the [resisting party] has no burden to produce opposing evidence or to disprove anything at all. [Citations.]" (Italics and fn. omitted.)

 "A summary judgment in favor of a defendant is proper 'if it is claimed the action has no merit' [citation] and such claim is proved to be correct. There is nothing in the statute which lessens the burden of the moving party simply because at the trial the resisting party would have the burden of proof on the issue on which the summary judgment is sought to be predicated. In such a case, on the motion for summary judgment, the moving party must generally negative the matters which the resisting party would have to prove at the trial. [Citations.]" (*Barnes* v. *Blue Haven Pools* (1969) 1 Cal.App.3d 123, 127 [81 Cal.Rptr. 444]; see also Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial, *supra*, ¶ 10:243, p. 10-59 [the "[d]efendant's burden is to disprove the complaint. It is not enough to simply show that the plaintiff has admitted having 'no witnesses' or 'no evidence' to back up certain claims (and therefore would be nonsuited if the case went to trial). [Citation.]" (Italics omitted.)].)

Unfortunately, the law in this area has been clouded by an opinion issued by this division. In *Vanderbilt Growth Fund, Inc.* v. *Superior Court* (1980) 105 Cal.App.3d 628, 636-637 [164 Cal.Rptr. 621], without discussing *Barnes* v. *Blue Haven Pools*, *supra*, 1 Cal.App.3d 123, this court upheld the grant of a motion for summary adjudication of issues on the basis that the moving party had demonstrated the resisting party "could not prove the extent of its [] damages allegedly sustained as a result of [the moving party's] negligence and breach of contract." (105 Cal.App.3d at p. 637, fn. omitted.) Regardless of whether the issue in question is liability or damages, no sound basis exists to have different rules governing the burden of proof a party must meet when bringing a motion for summary judgment or summary adjudication of issues. Accordingly, *Vanderbilt Growth Fund, Inc.* v. *Superior Court*, *supra*, 105 Cal.App.3d 628, to the extent it expresses a contrary view, is disapproved.

 In light of the trial court's evidentiary sanctions order, which we have upheld, we have little doubt that plaintiffs will not be able to meet their burden of proof at trial. However, while that issue may form the basis of a motion for judgment following the presentation of plaintiffs' case-in-chief (§ 631.8), it is not a proper part of a summary judgment motion. (*Barnes* v. *Blue Haven Pools*, *supra*, 1 Cal.App.3d at p. 127.)

Therefore, we must reverse the summary judgment.

## DISPOSITION

The judgment is reversed. The parties shall bear their own costs on appeal.

Spencer, P. J., and Ortega, J., concurred.