[No. B186705. Second Dist., Div. Five. Apr. 16, 2007.]

In re the MARRIAGE of PATTI and JOSHUA MICHAELY.
PATTI MICHAELY, Respondent, v.
JOSHUA MICHAELY, Appellant.

COUNSEL

Law Offices of Gene W. Choe and Nicholas Tepper for Appellant.

Freid and Goldsman, Gary J. Cohen and Elizabeth Yazdany for Respondent.

## OPINION

**ARMSTRONG, J.**—Joshua Michaely (Husband) appeals from the judgment entered in the dissolution proceeding filed by his former wife, Patti Michaely (Wife). We affirm.

### Factual and Procedural Summary[1]

This dissolution case has an extraordinarily long history. The petition was filed on January 5, 1995, after the parties had been married for 24 years. The judgment of dissolution was in August of 1998, but the judgment that is the subject of this appeal, the further judgment on reserved issues, was not entered until August of 2005. The reserved issues were financial issues, and the issues on appeal concern sanctions, in the form of factual findings, which were imposed on Husband as the result of his conduct during discovery, in particular his conduct at a 1999 deposition.

These are the relevant facts:

Wife first took Husband's deposition in March of 1995. In May of 1996, she noticed another deposition. Husband objected, but the court (the case was then assigned to Judge Denner), found that Wife had "demonstrated good cause for the suspension of Code of Civil Procedure section 2025(t), the 'one deposition rule,' . . . in that the issues and facts involved . . . are complicated," and because "[Husband] moves monies from entity to entity and the information which [Wife] obtained from [Husband's] prior depositions does not provide [Wife] with current information . . . In addition, the parties have lived an extravagant lifestyle, little or no income has been 'reported' on the parties' individual income tax returns or the income tax returns of [Husband] for the last several years. Therefore, [Wife] should be given an opportunity to complete discovery regarding the means by which [Husband] has been able sustain the marital standard of living without reporting substantial income."

The deposition never took place, delayed by discovery disputes and Wife's bankruptcy, which was filed in February 1998. The discovery disputes concerned Wife's August 1996 interrogatories, which Husband did not fully answer until March 1998, after Wife brought a motion to compel (Nov.

---

[1] Wife's request that we take judicial notice of the opinions of the United States District Court, District of Nevada, and the United States Court of Appeals for the Ninth Circuit, in Husband's bankruptcy, is granted. We also grant her request to substitute exhibit copies of specified trial exhibits, in place of originals.

1996), which resulted in a report (Aug. 1997) from Retired Judge Saeta, then the discovery referee, and a November 1997 court order adopting Judge Saeta's recommendation that Husband be compelled to further respond to the vast majority of Wife's 300 interrogatories and finding, inter alia, that "the volume of transactions and documents make this a complex tracing of assets case."

In March of 1999, after Wife obtained relief from the bankruptcy stay, she moved for an order reopening discovery. Trial was then set for September 1, 1999. Judge Lachs (the case was assigned to any number of judges over the years) granted the motion. Wife was ordered to pay Husband's airfare from Israel, where he then lived, and a $200-a-day per diem. The court also ruled that a discovery referee would preside over the deposition.

As Husband repeatedly points out, Wife's earlier request for additional discovery was denied. In June 1998 Wife moved for an order to vacate the trial date and to extend discovery. Judge Denner stayed trial of economic issues until relief from the stay was granted in Wife's bankruptcy, and denied the request to extend the discovery cutoff.

The deposition that Judge Lachs ordered took place in June 1999. Retired Judge Goldin presided as referee. In September, Wife moved for sanctions based on Husband's predeposition document production and his performance at the deposition. Hearing on the motion was before Judge Goldin. It did not take place until February 2000, apparently delayed by Husband's bankruptcy, which was filed in September 1999. (On Wife's motion, relief from the stay was granted in Jan. 2000.)

Judge Goldin's report was signed on October 2, 2000, and filed with the court on November 9 of that year. She found that at the deposition, Husband engaged in intentional, pervasive, and egregious evasiveness, was willfully untruthful, and gave inconsistent and contradictory testimony. His conduct at the deposition was the equivalent of refusing to sit for the deposition, in violation of court order. Husband failed to produce documents in response to the request for production, did not produce documents he claimed to have produced, claimed that he could not identify documents that he did produce, and intentionally produced voluminous documentation that was not responsive. He had in the past failed to comply with other discovery. His intentionally evasive and obstreperous conduct deprived Wife of meaningful discovery.

Judge Goldin recommended that various facts be established as true: Husband had management and control over the community estate during the marriage and after the separation; he owed a fiduciary duty to Wife in the management and control of community assets,[2] which he breached; and he willfully and maliciously engaged in acts to deprive Wife of her share of the community estate. Judge Goldin recommended that it be established as true that the estate had a value of $21 million on the date of separation, and additionally made a separate finding to that effect, based on the evidence.

Judge Goldin also recommended that it be established as true that Wife needed at least $19,000 per month in support and that Husband could pay that amount, and that Husband be precluded from opposing many of Wife's claims, specifically the claims that he misappropriated a long list of community properties, including real properties, businesses, and insurance policies.

In November 2001, the bankruptcy court hearing Husband's bankruptcy found that his debts to Wife and her lawyers were not dischargeable. The bankruptcy court's order recites that that court reviewed Judge Goldin's report, and while it did not give evidentiary effect to the report, it did give such support to the evidence cited therein. The bankruptcy court noted that it had read Husband's deposition transcript and that of his former associate Maureen Sowell, and found "extensive and persuasive support" for Judge Goldin's findings and recommendations.

In June 2002, the court (by now, Judge Sandoz) adopted Judge Goldin's report as its own order, finding that the order was necessary to level the playing field and prevent Wife from being prejudiced by Husband's willful and egregious misuse of discovery, and that the imposition of lesser sanctions would not be a sufficient remedy. The court found: "[Husband's] consistent evasion, coupled with [his] responses which were blatant untruths and not credible, amounted to an egregious abuse of the discovery process."

At trial, Husband took the position that sanctions precluded him from introducing evidence on the "vast majority" of the issues. Wife introduced evidence on income that should be imputed to Husband from the date of separation, her need for support, and fees.

---

[2] Of course, this is not a factual finding, but a statement of law. (Fam. Code, §§ 721, subd. (b), 1100, subd. (e); *In re Marriage of Hokanson* (1998) 68 Cal.App.4th 987, 992 [80 Cal.Rptr.2d 699].)

In the further judgment on reserved issues, the court found that Husband breached his fiduciary duty to Wife while he had control of community assets, willfully and maliciously engaged in acts to deprive her of her share of the community estate, and perpetrated fraud on her. Wife was awarded $21 million, plus interest, plus support of $35,360 per month, plus attorney fees.

Discussion

## 1. *The 1999 order reopening discovery*

Husband's first argument is that Judge Lachs's 1999 order that he sit for another deposition was an abuse of discretion. Husband contends, inter alia, that under Code of Civil Procedure section 2024.020, he had a right to have discovery end 30 days before trial, that Wife failed to meet and confer, and that in any event Wife had all the information she needed. Husband does not explain why any abuse of discretion on Judge Lachs's part could lead to reversal now. We do not see that it could. Husband's conduct at the deposition and throughout discovery caused the sanctions. The deposition order itself caused him no harm. We thus need not and do not reach the substance of Husband's arguments. (Cal. Const., art. VI, § 13.)

## 2. *Judge Goldin's report*

Husband next argues that the report was procedurally defective in two ways. First, he argues that the order appointing the referee was invalid under Code of Civil Procedure former section 640, which in 1999 provided that the referee must "reside in the county in which the action or proceeding is triable . . . ."[3] Husband points out that Judge Goldin's office was in Los Osos, in San Luis Obispo County, and argues that it is unreasonable to conclude that she lived in Los Angeles County, and that the trial court should have investigated the location of her residence. He further argues that he did not learn that Judge Goldin's office was in Los Osos until she began sending bills and other communications to the parties, citing in support his counsel's statements at oral argument on the sanctions.

His second procedural ground is based on Code of Civil Procedure section 643, which provides that "[u]nless otherwise directed by the court, the

---

[3] Code of Civil Procedure former section 640 provided that "A reference may be ordered to the person or persons, not exceeding three, agreed upon by the parties. If the parties do not agree, the court or judge must appoint one or more referees, not exceeding three, who reside in the county in which the action or proceeding is triable . . . ."

referees or commissioner must report their statement of decision in writing within 20 days after the hearing . . . ." (See former § 643, which provides substantially the same.) Husband argues that because Judge Goldin's report was not sent to the court within 20 days, it was invalid and should not have been considered.

Husband did not raise either ground until his opposition to Wife's motion for sanctions, and we agree with Wife that he has waived these objections. Contrary to his argument, Husband was informed from the outset that Judge Goldin's office was in Los Osos. The minute order proposing her (along with two other candidates) as discovery referee lists a post office box in Los Osos as her address. Any violation of the 20-day rule would have been apparent when the 20 days elapsed. Husband did nothing to timely cure either of these alleged defects, and cannot seek redress now.

What is more, Husband cites no prejudice which he suffered due to Judge Goldin's (presumed) residence outside Los Angeles County. He similarly cites no prejudice from the time delay, except to suggest that the report was too detailed and too thorough, hardly a judicial error cognizable on appeal.[4] He does argue that "harm is not the standard," seeming to suggest that violation of the 20-day rule is per se reversible. He is wrong. "Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred." (*Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833 [16 Cal.Rptr.2d 38].) Harm *is* the standard.

### 3. *The sanctions*

Husband next addresses the merits, arguing that the sanctions order was an abuse of discretion. He argues that discovery sanctions can only be imposed for failure to comply with a court order, or when a pattern of discovery abuse leads to a loss of evidence. He then argues that sanctions were imposed in this case only on the finding that his performance at the deposition was the equivalent of refusing to obey the court order that he sit for his deposition, and that the finding was in error. He argues that "he came, he sat, he answered," boasting that he provided substantive answers to half the questions asked. Ignoring the fact that Judge Goldin presided over the deposition

---

[4] We entirely reject Husband's unsupported contention that Judge Goldin either engaged in improper ex parte communications with Wife's counsel or "abdicated" her responsibilities by simply signing the report prepared by Wife's counsel, without exercising any oversight or discretion. We similarly reject the unsupported suggestion that Judge Goldin timed the report so that it would influence the judge in Husband's bankruptcy proceeding.

and was in an excellent position to make credibility findings, he also argues that there is no evidence to support the implied finding that when he answered "I don't know," he did so untruthfully. Without specific citation to the record, Husband also argues that there was no history of repeated discovery abuse.

■ A trial court·has broad powers to enforce its discovery orders, and may impose sanctions that are suitable and necessary to enable the party seeking discovery to obtain the objects of the discovery sought. (*Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 35 [9 Cal.Rptr.2d 396].) "Misuse of the discovery process includes failing to respond or submit to authorized discovery, providing evasive discovery responses, disobeying a court order to provide discovery, unsuccessfully making or opposing discovery motions without substantial justification, and failing to meet and confer in good faith to resolve a discovery dispute when required by statute to do so." (*Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1214 [45 Cal.Rptr.3d 265].) "The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action." (*Calvert Fire Ins. Co. v. Cropper* (1983) 141 Cal.App.3d 901, 904 [190 Cal.Rptr. 593].)

We see no abuse of discretion here. In his brief, Husband recites some of the questions he did answer, leading off with two questions about a girlfriend and two questions about Maureen Sowell's signature. Judge Goldin's report puts those questions and answers in context: Husband, who admitted that Sowell acted as a notary for him, testified that he could not recognize her signature, or, indeed, his own.·He knew that she continued to work for him after he moved to Israel, but not who was paying her. He testified that he did not know that his girlfriend (with whom he had lived) had purchased community real property (which he had allowed to go into foreclosure) at a foreclosure sale, or where she got the money to do so, although he did testify that they had discussed the possibility that she would buy the property.

Husband also recites his substantive, yes-or-no answers to questions about his ownership of many entities. Judge Goldin's report quotes his "I don't recall," or "I have no idea," answers to questions about his ownership interest in many more. He did not know when numerous properties went into foreclosure or were sold, whether his entities were partners in specified partnerships, or the assets which other of his entities owned. Husband argues that he testified about his ownership of an entity called JM Real Estate and the properties it owned. Judge Goldin quoted more of his testimony on that entity: he did not recall whether he had caused the entity to be formed, and did not know who was on its board or who its shareholders were or whether

it had filed tax returns. He testified that he had gotten a salary from that entity; he did not remember when that was.

■   These are but a few examples, but they are telling. The referee's report is a long and illuminating document, and its extensive quotes from the deposition more than support the finding that Husband egregiously abused the discovery process, both in his document production and in his answers to questions.

Husband also contends that the sanctions were an abuse of discretion because Wife had all the information she needed from other sources, including the business records he produced, and that she could have gone to third parties to obtain the information she needed. When his record references are examined, Husband is relying on the fact that Wife obtained documents from his office at the inception of this action, in 1995, on the fact that he answered special interrogatories in 1998, and on a March 1995 letter from his counsel to her counsel listing 20 properties (including the family home and its contents) and several debts, putting a value on each, and suggesting a property distribution.

Husband also cites Sowell's deposition, which Wife took in late 1998 or early 1999 after bringing two motions to compel, the first to obtain the deposition, and the second after Sowell (represented by Husband's attorney) asserted rights under the Fifth Amendment to the United States Constitution and refused to answer any questions.

To state the facts is to refute them. The 1995 information was simply too old, given Husband's plethora of assets and the fact that, as Judge Denner found, Husband moved money from entity to entity, and, as Judge Saeta found, this was a complicated case involving tracing of assets. The 1998 interrogatories were prefatory to the deposition. There is no showing that the answers could replace the deposition, and no reason to assume so. We say the same about Sowell's deposition. Husband points out that in 1995, Wife declared that Sowell had access to the business and financial records at Husband's office and was authorized to sign on various bank accounts held by some of Husband's business entities, and that in her motions to compel, Wife alleged that Sowell was a critical witness. That does not mean that she could replace Husband as a witness.

In this portion of his brief, Husband also cites the facts that his support obligation was reduced $21,000 per month to $1,700 per month, based on evidence that his income was $5,000. This took place in September of 1999, and we cannot see that the finding is relevant to any issue on appeal.

Finally in this regard, Husband contends that the court erred by not considering the history of all discovery, arguing more specifically that the court erred in finding that Sowell's deposition was irrelevant and not to be considered in determining sanctions. The order Husband cites is the *referee's* order denying Husband's request that she consider Sowell's deposition testimony. Judge Goldin listed four grounds for her ruling: (1) the testimony is irrelevant to the motion for sanctions; (2) the Code of Civil Procedure did not authorize Husband to submit the deposition to the court on a sanctions motion (citing Code Civ. Proc., former § 2025, subd. (u), since repealed); (3) the fact that Sowell sat for her deposition did not relieve Husband from his obligation to comply with discovery; (4) Husband failed to timely submit the testimony.

Husband does not cite to anything that would show that he asked the trial court to consider the testimony. The trial court thus did not err.

### 4. *Collateral estoppel*

When it considered Wife's motion to adopt Judge Goldin's report, the trial court found that Husband was "collaterally estopped from relitigating the issues litigated and resolved by the Bankruptcy Court," in his bankruptcy. Husband argues that "The court erred by adopting the [referee's] report based on [Wife's] collateral estoppel argument." Substantively, he argues that his due process rights were violated because Wife did not raise the issue until her reply papers in the proceedings on the motion to adopt the referee's report; and that under established law, collateral estoppel did not apply.

We need not reach the merits of Husband's arguments. Husband does not tell us which issues were "litigated and resolved by the Bankruptcy Court," so that we cannot tell what effect the collateral estoppel finding had. Moreover, even if, as he asserts, the court adopted Judge Goldin's report based on the bankruptcy court's findings, it was at most an alternate ground. A ruling on collateral estoppel could make no difference here.

### 5. *Other issues*

At the end of Husband's brief, he seems to argue that the final judgment must be reversed because the court ordered support in excess of that recommended by Judge Goldin, and ordered him to pay Wife's attorney fees, even though Judge Goldin did not recommend that order. Husband offers no authority which would establish that the court was limited by the report. What is worse, he ignores the fact that Wife introduced evidence at the trial.

## Disposition

The judgment is affirmed. Wife to recover costs on appeal.

Turner, P. J., and Kriegler, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 25, 2007, S153708. Werdegar, J., did not participate therein.