Filed 2/5/16  Shukartsi v. Kesselman CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| ELAN SHUKARTSI et al., | B255912 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. SC111600) |
| v. | |
| LYNN KESSELMAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Gerald Rosenberg, Judge.  Affirmed as modified.

Richard D. Rome for Defendant and Appellant.

Enenstein Ribakoff Lavina & Pham, Michael T. Rosenthal for Plaintiffs and Respondents.

_____

This appeal stems from a $15 million default judgment against Lynn Kesselman, the Kesselman Foundation, and Recovery Management Service Co. Inc. (Defendants) for misuse of the discovery process. Because we find terminating sanctions were not an abuse of discretion, the default was properly taken. However, the damages awarded exceeded by more than $2 million the damages sought in the operative complaint. Accordingly, we modify the judgment to reduce the damages award to $12,543,000, the amount shown in the complaint. The judgment is otherwise affirmed.

## FACTS

This is the second time we have reviewed a matter between these parties over the financial support provided to defendant Kesselman by his late wife, Corrine Shukartsi Kesselman.[1] In this case, Corrine's children allege Kesselman defrauded Corrine into donating money to false charities he set up for his personal gain. Corrine was married to Moshe "Tony" Shukartsi for 34 years until Tony's death in 2001. During their marriage, Corrine and Tony amassed substantial assets. They had two children, Dove E. Shukartsi Mayo and Elan P. Shukartsi. Corrine and Tony established the Shukartsi Living Trust on October 18, 1990, and Corrine executed a will on February 14, 1995.

Sometime after Tony's death, Corrine began a relationship with Kesselman. Corrine and Kesselman were married on April 7, 2008. During the course of their relationship, Corrine donated substantial sums to nonprofit entities run by Kesselman and paid him a monthly allowance through the entities he established. Corrine died on September 23, 2010.

## I. Lawsuit

On February 23, 2011, Dove and Elan (Plaintiffs) sued Kesselman, his son, his assistant, and certain banks alleging Kesselman and his cohorts devised a criminal enterprise to defraud Corrine of millions of dollars through the two nonprofit entities set up by Kesselman—the Kesselman Foundation and Recovery Management Service

---

[1] For ease of reference, we shall refer to the members of the Shukarsti family by their first names.

2

Co. Inc.[2]  The complaint alleged Corrine was induced to donate $75,000 to Recovery Management Service between October 2004 and May 2005 and $3 million to the Kesselman Foundation in July 2009.  Kesselman told Corrine the Kesselman Foundation and Recovery Management Service were established to help those with substance abuse problems and the poor.  According to the complaint, however, the money donated to these charities was used by Kesselman and his cohorts for their personal expenses.

Additionally, Kesselman allegedly stole various sums and items from Corrine, including an allowance of $6,000 per month that she paid to him through his charities.  This allowance was increased to $10,000 per month after their marriage.  Plaintiffs alleged Kesselman transferred at least $680,000 from the Shukartsi Living Trust shortly after Corinne's death into a joint account and ultimately, to an account controlled solely by him.  Kesselman also stole Corinne's personal items after her death, such as jewelry, art, and clothing.  Kesselman transferred to his name the title to a house in Van Nuys which Plaintiffs alleged Corrine intended to gift to her long-time housekeeper.

Plaintiffs believed Kesselman was able to manipulate Corrine by isolating her from her family and friends and providing her with a "stew of elixirs and medications, which resulted in her experiencing confusion and illness."  He also convinced her not to seek treatment for her cancer, but instead rely on his expertise.

Dove and Elan alleged four causes of action under the Racketeer Influenced and Corrupt Organizations Act (RICO; 18 U.S.C. § 1962) for conspiracy, wire fraud, and interstate transportation of stolen property.  They also sought to quiet title on the property in Van Nuys.  Alleging Kesselman loaded, viewed, and shared images of child pornography using the computers located at the Shukartsi family home in Brentwood, they sought civil remedies under the federal child pornography law in the last cause of action.  (18 U.S.C. § 2252A.)  Plaintiffs alleged the FBI raided the Shukartsi home due to

---

[2]     The complaint was later amended to add Ira Victor, an officer for the Foundation, as a defendant.  Aside from Defendants, the individuals and banks sued are not a part of this appeal.  Barbara Hunt, Kesselman's assistant, for example, settled with Plaintiffs for $250 and Plaintiffs dismissed Ira Victor from the case.

3

Kesselman's activities and the subsequent notoriety attached to the house decreased its resale value.

## II. Discovery Conflicts

The trial court appointed a discovery referee on July 22, 2011. Plaintiffs served Kesselman with written discovery on August 23, 2011, October 5, 2011, and May 25, 2012, seeking information regarding Kesselman's defenses as well as his bank account information. Kesselman failed to timely respond to any of the discovery. After Plaintiffs moved to compel responses to the discovery on June 27, 2012, the parties stipulated to a withdrawal of the motion in exchange for full responses without objections by July 20, 2012. Responses were served on July 20, 2012. However, Plaintiffs deemed Kesselman's responses to be deficient because they failed to provide complete information and they contained numerous objections, contrary to the stipulation. The parties attempted to meet and confer to resolve their differences with no success. Plaintiffs' attempts to meet and confer regarding the deposition of the person most knowledgeable at the Kesselman Foundation were also unsuccessful. Defense counsel informed Plaintiffs that Kesselman was the person most knowledgeable for the Foundation, but he resided in Thailand and would not appear for a deposition.

On September 6, 2012, the discovery referee conducted a hearing with the parties regarding Plaintiffs' motions to compel further responses from Recovery Management Services and Kesselman as well as a motion to compel Kesselman's deposition. In a report dated September 8, 2012,[3] the discovery referee recommended the trial court grant the motions to compel written discovery and order Recovery Management Services and Kesselman to provide responses without objection. Further, sanctions of $5,000 against Recovery Management Services and $9,000 against Kesselman were recommended. The referee recommended Kesselman be compelled to travel to Los Angeles, where the

---

[3] The referee issued an identical report on October 12, 2012, noting he inadvertently considered discovery motions in September that were not before him. However, the referee indicated his further review of the motions resulted in no changes to the recommendations and the issues remained the same.

4

Kesselman Foundation is located, to submit to a deposition as the person most knowledgeable for the Foundation. During argument, defense counsel indicated the corporate status of the Kesselman Foundation is suspended and he would move to withdraw as counsel for the Foundation unless steps were taken to revive its status.

The referee somewhat confusingly also recommended Kesselman not be ordered to attend his deposition in his individual capacity as he presented evidence his physical disabilities prevented him from travelling. However, the referee noted that if Kesselman agreed to appear for his person most knowledgeable deposition, he should be ordered to be deposed in his individual capacity in Los Angeles as well. The trial court signed the report on September 27, 2012, adopting the referee's recommendations, and it was served on December 11, 2012.

In a motion for terminating, evidentiary, or issue sanctions filed on February 25, 2013, Plaintiffs' counsel averred that Kesselman and Recovery Management Services had failed to provide any further responses ordered by the trial court and failed to pay the monetary sanctions ordered. Neither did Kesselman appear or agree to a deposition as the person most knowledgeable for the Foundation or in his individual capacity. The motion for terminating sanctions was filed by Elan, who argued that Defendants "stonewalled" Plaintiffs' attempts to conduct discovery and hampered his ability to prepare his case.

Defendants, represented by new counsel, opposed the motion for terminating sanctions with a five sentence opposition, arguing that ADR services was not the correct venue or forum for this motion because it merely sought penalties on the previous court order and as such, should have been filed in the Superior Court rather than with the discovery referee. The opposition further noted that Kesselman had been unable to pay his share of the discovery referee's fees because Plaintiffs had attached his funds in Israel.

The discovery referee recommended the trial court strike Kesselman's answer and enter his default, as well as that of the Kesselman Foundation and Recovery Management Service. In addition, the discovery referee recommended imposing additional sanctions

5

of $9,600 against Kesselman.  The trial court approved and adopted the recommendations on April 17, 2013.  A request for entry of default was filed on June 12, 2013, and default was entered that day.

Defendants moved to set aside the default on July 2, 2013, on the ground defense counsel believed the case would be transferred due to budget cuts and nothing further would be conducted in that department.  Counsel also indicated he failed to receive notice that the trial court had signed the recommendation and did not learn of it until he received Plaintiffs' request for default judgment.  Thus, he was not afforded a chance to be heard prior to the trial court's approval of the recommendation to issue terminating sanctions.

In a statement of damages, Plaintiffs requested a default judgment for damages of $5,159,000 to be trebled under the RICO statute, plus over $10 million in punitive damages.  A default judgment was entered on April 17, 2014, in the amount of $15,477,000 with title to the property in Van Nuys to be transferred to Dove as successor trustee of the Shukartsi Living Trust.  Kesselman filed his notice of appeal on April 22, 2014.

## DISCUSSION

Recognizing that the trial court had ample reason to issue terminating sanctions for their misuse of discovery, Defendants spend little time challenging the merits of the trial court's decision.  Instead, they contend that even if the trial court had properly struck their answer, a default judgment should not have been taken because the first amended complaint failed to adequately plead the elements of a RICO claim against them and Plaintiffs lacked standing to sue in any case.  Further, Defendants argue the trial court erred in not setting aside the default due to defense counsel's mistake, surprise and excusable neglect.  None of these are sufficient reasons to reverse the default judgment.

6

## I. The Discovery Sanctions Were Not An Abuse of Discretion

Code of Civil Procedure[4] section 2023.030, subdivision (d)(4) authorizes the entry of a default judgment against a party as a sanction for misuse of the discovery process. Terminating sanctions for discovery abuse may be imposed "after considering the totality of the circumstances:  [the] conduct of the party to determine if the actions were willful; the detriment to the propounding party; and the number of formal and informal attempts to obtain the discovery." (*Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1246.)

" 'The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action.' " (*Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 36.)  "A decision to order terminating sanctions should not be made lightly.  But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction." (*Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 279-280.)  Courts have imposed terminating sanctions when parties have willfully disobeyed one or more discovery orders.  (*Lang v. Hochman, supra*, 77 Cal.App.4th at pp. 1244-1246 [discussing cases].)

Here, Defendants disobeyed the trial court's initial discovery order to submit to a deposition of the person most knowledgeable for the Kesselman Foundation and to provide responses without objection to the multiple written discovery propounded by Plaintiffs.  Defendants also failed to pay any of the monetary sanctions ordered by the trial court.  Defendants were granted multiple extensions and the parties attempted numerous times to meet and confer on this issue.  Contrary to Defendants' contention that additional time could have been given for responses to be produced and a deposition to be taken, it is obvious the trial court's order to strike his answer was not an " 'arbitrary, capricious, or whimsical action.' " (*Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns*, *supra,* 7 Cal.App.4th at p. 36.)

---

[4]    All further section references are to the Code of Civil Procedure unless otherwise specified.

We further reject Defendants' argument that the default judgment was erroneously issued because codefendant Ira Victor " 'might have exonerated the defendants.' " Whether Defendants had viable defenses against Plaintiffs' claims is irrelevant to whether they misused the discovery process such that terminating sanctions were warranted.

## II.     Plaintiffs Sufficiently Alleged RICO Claims Against Defendants

While a defendant in default " 'confesses the material allegations of the complaint[,]' " a default judgment may not be entered when the complaint's allegations do not state a cause of action.  (*Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 392 (*Los Defensores*); *Taliaferro v. Davis* (1963) 216 Cal.App.2d 398, 408-414; *Taliaferro v. Taliaferro* (1959) 171 Cal.App.2d 1, 3-9.)  This is because a defendant in default "'admits only facts that are well pleaded.'"  (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 829, fn. omitted, quoting 6 Witkin, Cal. Procedure (4th ed. 1997) Proceedings Without Trial, § 160, p. 574; *Los Defensores, supra,* at p. 392.)

"Our inquiry here into the complaint's adequacy is akin to that triggered by a general demurrer, namely, whether the complaint lacks factual allegations indispensable to the asserted claims.  [Citations.]  A court must indulge reasonable inferences in support of the factual allegations in the complaint; mere uncertainties and other defects subject to a special demurrer do not bar a default judgment against the defendant.  [Citations.] Nonetheless, the absence of essential factual allegations is fatal to a judgment against the defendant.  [Citation.]" (*Los Defensores, supra,* at pp. 392-393.)  We find the complaint was adequate.

### A.  Standing

Defendants contend Dove and Elan lack standing to sue in their individual capacity because the thrust of the monetary award was based on RICO violations against the Shukartsi Trust.  We disagree.

It is generally recognized that beneficiaries of a trust lack standing to sue on behalf of the trust. (*Powers v. Ashton* (1975) 45 Cal.App.3d 783, 787.) Instead, only the trustee of the trust has standing to sue because the trustee holds title to the assets contained in the trust on behalf of the beneficiaries. (*Ibid.*)

Here, Dove is the successor trustee of the Shukartsi Trust. Defendants aver the first amended complaint (FAC) merely showed Dove in her individual capacity and failed to name her as a plaintiff suing as the trustee in any cause of action. California Rules of Court, rule 2.112 requires each cause of action to specifically state, among other things, "[t]he party asserting it if more than one party is represented on the pleading." In the FAC, each separately stated cause of action showed the claim was brought "by Plaintiffs Dove Shukartsi Mayo and Elan Shukartsi." According to Defendants, this language established that Dove brought each of those causes of action in her individual capacity rather than as trustee. In its general allegations describing the parties to the lawsuit, however, "Dove Shurkartsi Mayo" is defined as a plaintiff suing "individually and as Successor Trustee of the Shukartsi Living Trust dated October 18, 1990." That is sufficient to establish that Dove brought each of the causes of action both in her individual capacity and as successor trustee. In addition, both Dove and Elan have standing to sue in their individual capacities; Defendants acknowledge the allegations in the FAC show Corinne personally suffered losses in addition to those suffered by the Trust. There is no contention that Dove and Elan, as Corinne's children, lack standing to sue for personal losses suffered by Corinne.

Defendants further contend there were insufficient allegations to identify the trust and its trustee because the FAC failed to allege the essential elements of a trust: (1) trust intent, (2) trust property, (3) trust purpose, and (4) a beneficiary. (*Osswald v. Anderson* (1996) 49 Cal.App.4th 812, 818.) However, nothing cited by Defendants support the argument that the trust elements must be plead in this instance, where the existence or the validity of the trust is not in dispute. Indeed, it is undisputed that Dove is the trustee of the Shukartsi Trust. In each of the cases relied upon by Defendants, the existence and terms of a trust was in dispute. (*Chang v. Redding Bank of Commerce* (1994) 29

9

Cal.App.4th 673 [whether trust created by depositing money intended for subcontractors in general contractor's bank account]; *Osswald v. Anderson, supra,* 49 Cal.App.4th at p. 818 [dispute as to whether trust was properly funded].)

We likewise dismiss Defendants' standing argument as it relates to the discovery motion. According to Defendants, Elan, who was the sole moving party, lacked standing to bring the motion for terminating sanctions. Even if he had standing, his motion could not benefit the other Plaintiffs, namely Dove in her individual capacity and as trustee. As we discussed above, Elan has standing to sue in his individual capacity for his mother's losses. As a party to the litigation, he may seek discovery from Kesselman and the other defendants. Elan also had standing to bring discovery motions when Defendants failed to respond or comply with the trial court's orders relating to his discovery requests. Dove filed a written joinder in the motion for terminating sanctions and is entitled on that basis to benefit from the terminating sanctions.

Moreover, Dove's interests align with Elan's; they share an attorney and all claims have been brought on behalf of both of them. Section 2023.030, under which Elan's motion was brought, authorizes a trial court to impose terminating sanctions "against anyone engaging in conduct that is a misuse of the discovery process." On the face of the statute, there is no limitation to the potential beneficiaries of the sanction. Accordingly, a sanction award benefitting both parties, particularly ones with perfectly aligned interests, would be just. (*See Calvert Fire Ins. Co. v. Cropper* (1983) 141 Cal.App.3d 901, 905.)

### B. Loss to the Trust

Next, Defendants assert the FAC fails to establish the trust claimed any loss merely because Corinne gave assets to Kesselman. Defendants omit significant portions of the FAC which allege assets were stolen from the trust. In fact, Defendants acknowledge "the pleading alleges that the defendants defrauded the trust; moved separate property assets from the trust into joint accounts; and stole money from the trust." Thus, this argument is meritless.

10

**C.  RICO Causes of Action**

The RICO statute creates a private cause of action for treble damages by providing "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."  (18 U.S.C. § 1964(c).)  In this matter, we exercise concurrent jurisdiction over civil actions under RICO by applying federal law.  (*Alicia T. v. County of  Los Angeles* (1990) 222 Cal.App.3d 869, 879.)

To state a cause of action under RICO, a plaintiff must plead facts to show (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. (*Gervase v. Superior Court* (1995) 31 Cal.App.4th 1218, 1228-1229.)  The enterprise is an entity, a group of persons associated for a common purpose of engaging in a course of conduct.  It is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.  (*People ex rel. Sepulveda v. Highland Fed. Savings & Loan* (1993) 14 Cal.App.4th 1692.)  For an act or omission to qualify as racketeering activity, it must be included in the extensive list of prohibited activities set forth in title 18 United States Code section 1961(1), including wire fraud (18 U.S.C.S. § 1343), mail fraud (18 U.S.C.S. § 1341), and interstate transportation of stolen property (18 U.S.C.S. §§ 2314, 2315).

The FAC stated a claim for RICO violations by alleging a scheme by Kesselman and his cohorts to defraud Corrine and steal from the trust through wire fraud, mail fraud, and interstate transport of stolen goods.  Defendants contend that racketeering activity did not occur because Corinne allegedly gave him and his foundation certain assets and a monthly stipend.  Thus, the FAC merely alleged "a domestic squabble" rather than "continued criminal activity" under RICO.  Kesselman mischaracterizes the allegations in the FAC.

Mail fraud and wire fraud are proven by showing a scheme or artifice to defraud combined with either mailing or electronic communication for purpose of executing the scheme.  (*VanDenBroeck v CommonPoint Mortg. Co*. (6th Cir. 2000) 210 F.3d 696, 702,

11

overruled on other grounds by *Bridge v. Phoenix Bond & Indem. Co.* (2008) 553 U.S. 639, 646.)  The FAC alleged Kesselman and his assistant "utilized the Kesselman Foundation to fabricate an enterprise which used the mail and phones for the purposes of interstate fraud, as well as used the mail and telephones to create bank accounts in the name of the Kesselman Foundation."  "Specifically, between September 23, 2010, and October 1, 2010, Kesselman transferred at least \$680,000 out of various joint accounts at Merrill Lynch, Wachovia, and Manufacturers Bank across state lines and out of the United States to accounts belonging to the Kesselman Defendants at Morgan Stanley and the Banks using mail, wires, telephones, and the Internet."  From these allegations alone, the FAC sufficiently alleged wire fraud, mail fraud, and interstate transportation of stolen property under RICO.

### III.    The Trial Court Did Not Err in Refusing to Set Aside the Default

After the default was entered, Defendants moved to set aside the default on the ground it was taken without proper authorization under the Rules of Court and on the basis of attorney mistake under section 473, subdivision (b).  In support, defense counsel submitted a declaration attesting to his belief that no further action would be taken in the department to which the case was assigned because the case was being transferred due to the realignment caused by the fiscal crisis.  Defense counsel further explained he did not receive notice the trial court had signed the discovery referee's recommendation to issue terminating sanctions until June 12, 2013, almost two months after the order had been issued.  Defendants argued the referee went outside the scope of his authority and in any event, relief was mandatory for their attorney's surprise, mistake and excusable neglect. The trial court denied the motion on July 23, 2013.

On appeal, Kesselman contends the trial court erred in not setting aside the default for attorney mistake, surprise and excusable neglect under section 473, subdivision (b). Kesselman contends relief was mandatory because an attorney's affidavit was submitted with the motion.  Not so.

12

Section 473, subdivision (b) provides for discretionary or mandatory relief from certain prior actions or proceedings in the trial court. "Under the discretionary relief provision, on a showing of 'mistake, inadvertence, surprise, or excusable neglect,' the court has discretion to allow relief from a 'judgment, dismissal, order, or other proceeding taken against' a party or his or her attorney. Under the mandatory relief provision, on the other hand, upon a showing by attorney declaration of 'mistake, inadvertence, surprise, or neglect,' the court shall vacate any 'resulting default judgment or dismissal entered.' " (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 615-616.) Applications seeking relief under the mandatory provision of section 473 must be "accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect." (§ 473, subd. (b).) The mandatory provision further adds that "whenever relief is granted based on an attorney's affidavit of fault [the court shall] direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties." (*Ibid*.)

Relief under section 473 is not mandatory simply because an attorney's affidavit accompanies a motion; instead, a motion seeking mandatory relief under section 473 must expressly request such relief. (*Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1126-1127.) Here, Defendants' notice of motion and motion to set aside default failed to mention any relief under the mandatory provision of section 473. Instead, it cited to the discretionary provision by seeking relief for "excusable neglect" three times. The trial court did not err in failing to grant mandatory relief because it was not requested.

Nor did the trial court abuse its discretion in denying relief under the discretionary provision of section 473. (*Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1602.) The attorney's affidavit failed to establish mistake, inadvertence, or excusable neglect. The test of whether neglect is excusable is whether " 'a reasonably prudent person under the same or similar circumstances' might have made the same error. [Citations.]" (*Bettencourt v. Los Rios Community College Dist.* (1986) 42 Cal.3d 270, 276.)

13

Defense counsel's own declaration and the record support the trial court's exercise of its discretion. Kesselman acknowledged he was aware of the discovery referee's report recommending terminating sanctions. That recommendation was served on Kesselman on March 26, 2013, by mail and by facsimile. Under section 643, subdivision (c), Defendants had 10 days after the report was served and filed to submit an objection. Although defense counsel appeared before the trial court on April 2, 2013, three days before the 10 day deadline, there is no indication he requested a continuance to submit objections nor does he state in his affidavit that he believed the deadlines under section 643 were suspended. Further, the notice of reassignment, served on April 15, 2013, indicated that the case would be reassigned "effective April 29, 2013" to Judge Gerald Rosenberg. Even if defense counsel believed no further action would be taken in Judge Tillmon's court, he was aware of the new assignment and when it would occur. These facts fail to establish mistake, inadvertence, or excusable neglect.

## A. No Other Grounds Warrant Setting Aside the Default Judgment

Kesselman contends a further ground for setting aside the default judgment lies in Plaintiffs' failure to check off a box on the form requesting default judgment which certifies that none of the defendants are in military service. Section 3931 of Title 50 of the United States Code is intended to protect service members from default judgments. Accordingly, the statute expressly provides that "[t]his section applies to any civil action or proceeding, including any child custody proceeding, in which the defendant does not make an appearance." (50 U.S.C. § 3931(a).) That is not the case here. It is undisputed that Kesselman and the other defendants made an appearance in the proceeding and this provision did not apply. It is also undisputed that Kesselman and the other defendants are not members of the military.

In any case, the statute does not afford a defendant the right to set aside a default judgment for a plaintiff's failure to check a box certifying military status. The statute provides the court discretion to require the plaintiff file a bond if it is unable to determine from the affidavit whether the defendant is a member of the military. (50 U.S.C. § 3931(b)(3).) At worst, that is what happened in this case, where Plaintiffs

14

failed to check the box indicating no defendant was a member of the military. Moreover, the court is required to set aside a default judgment only if the defendant is a member of the military, has been materially affected by reason of that military service in making a defense to the action, and has a meritorious or legal defense to the action or some part of it. (50 U.S.C. § 3931(g)(1).) Defendants made not such showing. Thus, Defendants are not entitled to set aside the default on this ground.

## IV. Plaintiffs Adequately Set Forth The Damages Sought

Defendants next challenge the damages awarded under the default judgment, arguing the FAC did not set forth the amount of damages sought and the statement of damages was defective.[5] Defendants are incorrect.

The record shows that a statement reflecting the full award of damages was filed and served at the time Plaintiffs filed their request for entry of default. The trial court entered the default the very same day. It is clear that the statement of damages alone failed to provide Defendants with sufficient notice of the damages sought. (*Matera v. McLeod* (2006) 145 Cal.App.4th 44, 60-62 [service of statement of damages two days before answer was struck and default entered was not reasonable period of time to provide notice to defendants].)

However, the FAC provided ample notice to Defendants that the damages sought were considerable. In particular, the FAC alleged the following specific sums taken from Corinne or the trust: $75,000 to Recovery Management Service; $3 million to the Kesselman Foundation; $6,000 per month from January 2006 to July 2008 for a total of $186,000; $10,000 per month from August 2008 to September 2010 for a total of

---

[5] We summarily reject Defendants' argument that the trial court was improperly influenced to award excessive damages by a request for excessive punitive damages. No punitive damages were granted and there was no indication the trial court was influenced by the request. The damages awarded by the trial court were supported by the allegations in the FAC and by the statement of damages.

$240,000; and $680,000 after Corinne's death. These amounts alone total $4,181,000[6] and are sufficient to provide notice to Defendants under section 580. (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 829 (*Greenup*); *Simke, Chodos, Silberfeld & Anteau, Inc. v. Athans* (2011) 195 Cal.App.4th 1275, 1286; *Thorson v. Western Development Corp.* (1967) 251 Cal.App.2d 206, 213 [allegations of the complaint with specific amount alleged combined with the prayer for "damages according to proof" gave sufficient notice to defendant].) The FAC further alleged Plaintiffs were "entitled to recover threefold their damages" pursuant to 18 U.S.C. section 1964(c) in paragraphs 52, 61, 77, and 86 of the FAC.

By our calculations, treble $4,181,000 in damages equals $12,543,000, which is $2,934,000 short of the $15,477,000 damages awarded under the default judgment. In the event of a default, the relief granted to the plaintiff may not exceed the dollar amount demanded in the complaint or in a statement of damages. (§§ 580, 425.11.) This rule applies not only to routine defaults, where the defendant fails to file an answer, but also to defaults entered as a sanction for misusing the discovery process. (*Greenup*, *supra,* 42 Cal.3d at pp. 827-829.) The California Supreme Court in *Greenup* thus directs that the judgment be modified to reflect an award of $12,543,000, the amount demanded in the FAC. (*Ibid.*)

---

**6** The statement of damages, from which the trial court derived its award amount, reflects compensatory damages of $5,159,000, which Plaintiffs indicate include $1,014,000 in assets that were purportedly stolen by Kesselman from Corrine's accounts during their relationship, a $6,000 charitable donation to Recovery Management Services and $198,000 in pre-payments for the Foundation's office space. These amounts were not identified in the FAC. As a result, we exclude them from our calculation.

**DISPOSITION**

The judgment is modified to reduce the damages award to $12,543,000. In all other respects, the judgment is affirmed. Respondent is awarded costs on appeal.


BIGELOW, P.J.

We concur:


RUBIN, J.


GRIMES, J.